IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY SESSION, 1999

FILED

June 9, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 01C01-9805-CR-00224 |
| Appellee | ) | |
| | ) | DAVIDSON COUNTY |
| vs. | ) | |
| | ) | Hon. Seth Norman, Judge |
| DAVID E. SMITH, JR., | ) | |
| | ) | (Theft of Property over $1000) |
| Appellant | ) | |

For the Appellant:

**Jeffrey A. DeVasher**
Asst. Public Defender
1202 Stahlman Building
Nashville, TN  37201

(ON APPEAL)

**Karl Dean**
Public Defender


**Stephen G. Young**
**Joseph E. Clifton**
Asst. Public Defenders
1202 Stahlman Building
Nashville, TN 37201

(AT TRIAL)

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Marvin E. Clements, Jr.**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Victor S. (Torry) Johnson III**
District Attorney General

**Pamela Anderson**
Asst. District Attorney General
Washington Sq., Suite 500
222-2nd Avenue North
Nashville, TN  37201


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

**OPINION**

The appellant, David E. Smith, Jr., appeals the verdict of a Davidson County jury finding him guilty of one count of theft of property over $1,000, a class D felony. For this offense, the appellant received a two year suspended sentence. On appeal, the appellant challenges the sufficiency of the convicting evidence and contends that the trial court erred by denying his request for judicial diversion.

Finding no errors of law requiring reversal, we affirm.

**Background**

During the early morning hours of September 16, 1996, Metro Police Officer Michael Eva responded to a reported robbery at the Hardee's Restaurant located at 5775 Old Hickory Boulevard, Nashville. Upon his arrival, he was met at the door by employee David E. Smith, the appellant in this case.[1] The appellant reported that he had been robbed.

When questioned by Officer Eva, the appellant related that the perpetrator forced his way through a side door on the south side of the building. He stated that the perpetrator ordered him to get underneath a desk in the manager's office. The appellant remained beneath the desk while the perpetrator opened the combination safe and took one deposit bag. Additionally, he described the perpetrator as a white male, wearing gloves, a black ski mask, shorts, and a red and blue light weight jacket. When Officer Eva inspected the alleged door of entry, he observed that the door was still locked and he detected no signs of forcible entry. Additionally, Officer Eva did not observe any indication that the safe had been forcibly entered. Because

---

[1]The appellant was the "clean-up" person at the Hardee's location. The proof was undisputed that he would be the only person in the restaurant from closing time at 10:00 p.m. until he finished cleaning the facility.

the safe was closed, Officer Eva contacted Wanda Keith, the store manager, requesting that she come to the store to open the safe. The proof established that only a store manager had knowledge of the safe's combination. When the safe was opened, it was determined that one deposit bag was stolen containing $2526. Moreover, Officer Eva discovered that "there were two other deposit bags in the safe that [weren't] taken. . . ," containing approximately $1200. The appellant reported that the incident occurred at approximately 1:10 a.m. The incident was not reported to law enforcement authorities until 1:50 a.m., a forty minute lapse from the reported time of occurrence. In an attempt to explain the time lapse, the appellant told Officer Eva that "he didn't know what to do." Officer Eva then instructed dispatch to release information regarding the robbery and the description of the alleged perpetrator to all patrol cars in the area.

Due to various inconsistencies between the appellant's statements and the contradictory physical evidence at the scene, he became a suspect in the investigation. After Officer Eva informed the appellant of his rights, the appellant responded, "Okay. Now, I'm going to tell you the truth." The appellant abandoned his original version of events and related that, approximately four days prior to the incident, Mark Henley, a recently fired manager at Hardee's, contacted him "to help him steal some money from the business." The appellant reported that, despite his unwillingness to cooperate with Henley, Henley continued to contact the appellant regarding his plan. The appellant stated that Henley came to Hardee's on the night of the incident. Henley beat on the door until the appellant, out of his fear of Henley, let him inside. Henley then went to the safe, opened it, and took the deposit bag.[2] Notwithstanding his prior affirmation that he was going to "tell the truth," he again changed his story. He stated that "he did agree to let Mark Henley in the business

_____

[2]The appellant later admitted and independent police investigation confirmed the similarities between the appellant's initial description of an anonymous perpetrator and Mark Henley.

3

to take the money, and that Mark Henley told him to come to his house when he got off work to get his half of the money."

After the appellant's implication of Henley in the crime, Officer Mark Webb proceeded to the residence of Henley. A search of Henley's home did not reveal the stolen deposit bag from Hardee's. Moreover, officers also determined that Henley's vehicle was not in operating condition and observed that a heavy dew had formed on the car indicating that it had not been moved recently.

At trial, the appellant offered a somewhat modified version of his previous statements to the police. He again related that Henley had pestered him about "helping [Henley] rob the store." On the night of the theft, Henley appeared at the restaurant and the appellant testified that he permitted Henley to enter only because he feared Henley would somehow harm his family.

It is undisputed that the appellant did not have a key to the Hardee's building and that he did not know the combination to the safe. It is also uncontested that Mark Henley, a former manager at Hardee's did know the combination to the safe, although he did not have a key to the building. The deposit bag containing approximately $2526 was never recovered.

Based upon this evidence, the jury found the appellant guilty of theft of property over $1000.

**I. Sufficiency of Evidence**

The appellant first contends that the evidence introduced against him at trial is insufficient as a matter of law to support a conviction for theft of property over

4

$1000. The appellant's argument is two-fold: (1) "the State's evidence is entirely circumstantial and does not exclude every reasonable hypothesis except that of his guilt;" and (2) "the evidence does not prove beyond a reasonable doubt that he was criminally responsible for the conduct of Mark Henley, the person who, according to the uncontroverted proof in this case, took the money from the safe at the restaurant."[3]

Initially, a defendant is cloaked with the presumption of innocence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn.1982). However, a jury conviction removes this presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. Id. In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn.1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn.1994); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

Circumstantial evidence alone may be sufficient to support a conviction. See State v. Buttrey, 756 S.W.2d 718, 821 (Tenn.Crim.App.1988); State v. Cooper, 736 S.W.2d 125, 129 (Tenn.Crim.App.1987); State v. Gilliam, No. 01C01-9603-

---

[3]The appellant has failed to include a transcript of the jury instructions given in the present case. As such, we assume that the trial court properly instructed the jury on the theory of criminal responsibility.

CC-00105 (Tenn.Crim.App. at Nashville, May 7, 1997) (for publication). However, if a conviction is based purely on circumstantial evidence, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn.1987); Cooper, 736 S.W.2d at 129. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that the [appellant] is the one who committed the crime." Tharpe, 726 S.W.2d at 896. When reviewing the sufficiency of circumstantial evidence, this court must remember that the jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." Gilliam, No. 01C01-9603-CC-00105 (citations omitted).

In order to obtain a conviction for theft of property over $1000, the State must show, beyond a reasonable doubt, that "a person ..., with intent to deprive the owner of property, ... knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (1991); Tenn. Code Ann. § 39-14-105(3) (1991). Additionally, Tenn. Code Ann. § 39-11-401(a) (1991) provides that: "A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." "A person is criminally responsible for an offense committed by the conduct of another if: (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1991). In other words, the jury must find that the appellant somehow associated himself with the commission of the crime, acted with knowledge that an offense was being committed, and shared in the criminal intent of the principal. See State v. Maxey, 898 S.W.2d 756, 757 (Tenn.Crim.App.1994).

6

The State's proof demonstrated that the appellant was the sole occupant in the Hardee's restaurant at the time of the theft. The proof was undisputed that, during the appellant's shift, no other person could enter the building except through the use of a key, by force, or with the appellant's assistance. The appellant reported the theft forty minutes after its occurrence. When police officers arrived, they discovered no signs of forcible entry into the restaurant. After changing his story several times, the appellant finally admitted that he let Mark Henley into the restaurant and that he knew that Mark Henley planned to open the safe and take one deposit bag. He stated that he was instructed to go to Henley's residence after the theft to obtain his half of the money. From these facts and circumstances, a jury could have rationally inferred the guilt of the appellant. See State v. Crawford, 470 S.W.2d 610, 613 (Tenn.1971). Accordingly, we conclude that, when viewed in the light most favorable to the State, the evidence presented at trial was sufficient to support the findings by the trier of fact that the appellant committed the offense of theft of property under either a direct liability or criminal responsibility theory.[4] Tenn. R. App. P. 13(e). This issue is without merit.

## II. Judicial Diversion

The appellant contends that the trial court erred by denying his request for judicial diversion. Initially, we note that the appellant never formally requested that the trial court consider or grant judicial diversion. Indeed, the record is absent any mention of judicial diversion except for one statement in the appellant's closing argument at the sentencing hearing wherein defense counsel stated, "And he is

---

[4]The appellant's assertion that the proof was uncontroverted as to Mark Henley's participation as the principal actor in the theft is not supported, beyond a reasonable doubt, by the record. The record contains no proof other than the appellant's statements and testimony to indicate that Mark Henley was a participant in the crime. Thus, we conclude that it was not necessary for the State to rely solely upon a theory of criminal responsibility in order to obtain a conviction.

eligible for 40-35-313, expungeable supervised probation."[5]   This passing comment can hardly be considered an adequate request to properly bring the issue of judicial diversion before the trial court.[6]  See, e.g., State v. Starks, No. 02C01-9704-CR-00133 (Tenn. Crim. App. at Jackson, Jun. 11, 1998), perm. to appeal denied, (Tenn. Dec. 28, 1998); State v. Tidwell, No. 01C01-9610-CR-00445 (Tenn. Crim. App. at Nashville, Mar. 4, 1998), perm. to appeal denied, (Tenn. Nov. 9, 1998). Notwithstanding, we proceed to address the issue on its merits.

The decision of whether to place an appellant on judicial diversion is within the sound discretion of the trial court.  See  State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996).  Thus, upon review by an appellate court, if "any substantial evidence [exists in the record] to support the refusal," the decision of the trial court will be upheld.  See  State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

In making the determination of whether to grant judicial diversion, the trial court must consider the following factors:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others.  The trial court should also consider whether judicial diversion will serve the ends of justice -- the interests of the public as well as the accused.

State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997), perm. to appeal denied, (Tenn. 1998) (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted)).  Additional factors which may be considered include the appellant's attitude, his behavior since his arrest, his home environment, current drug usage, emotional stability, past employment, general reputation, family

---

[5]We note, however, that trial counsel expressly asked the court to impose a two year sentence on supervised probation.  The court imposed such a sentence.

[6]Because the appellant failed to make a definite request for judicial diversion, we find no merit to his claim that his case should be remanded for resentencing due to the trial court's failure to expressly state its reasons for denying judicial diversion.

8

responsibilities, and the attitude of law enforcement. Id, (citing State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)).

The record in the present case reveals that the appellant has maintained consistent employment, has exhibited good behavior since his arrest, is emotionally stable, does not abuse either alcohol or illegal drugs, and contributes to the support of his fiancee and child.  Notwithstanding these factors favoring judicial diversion, the circumstances of the offense itself support a denial of judicial diversion, *i.e.,* the appellant's crime was committed against his employer, he repeatedly misled law enforcement officers in his initial report of the incident, and the stolen money was never recovered.  The appellant's actions indicate a violation of a position of trust, a sustained intent to violate the law, and lack of candor with authorities.  Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant the appellant judicial diversion.  This issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
NORMA MCGEE OGLE, Judge