IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**STATE OF TENNESSEE v. DENNIS W. DAUGHTRY**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 97-11314;98-04587     Arthur T. Bennett, Judge**

---

**No. W1999-00792-CCA-R3-CD - Decided June 21, 2000**

---

The Defendant, Dennis W. Daughtry, pleaded guilty to two counts of possession of a controlled substance with intent to sell or deliver. Pursuant to his plea agreement, he received a fine of $2,000 and two concurrent eighteen month sentences, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied the Defendant's requests for alternative sentencing and judicial diversion and ordered the Defendant to serve his eighteen month sentences in the local workhouse. In this appeal as of right, the Defendant argues that he should have been granted alternative sentencing and/or judicial diversion. We modify the manner of service of each of the Defendant's sentences to ninety days incarceration with the remainder served on supervised probation, and we affirm the trial court's denial of judicial diversion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Modified.**

WELLES, J., delivered the opinion of the court, in which TIPTON, J., and LAFFERTY, SR. J., joined.

Robert M. Brannon, Memphis, Tennessee, for the appellant, Dennis W. Daughtry.

Paul G. Summers, Attorney General and Reporter, Tara B. Hinkle, Assistant Attorney General, William L. Gibbons, District Attorney General, and Robert Brannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant, Dennis W. Daughtry, was indicted by the Shelby County Grand Jury in September 1997 for unlawful and knowing manufacture of marijuana, unlawful and knowing possession with intent to sell marijuana, and unlawful and knowing possession with intent to deliver marijuana. In March 1998, he was indicted on two new counts: unlawful and knowing possession with intent to sell marijuana and unlawful and knowing possession with intent to deliver marijuana. The record reveals that on March 17, 1999, the Defendant pleaded guilty to two counts of unlawful and knowing possession of marijuana with intent, but it does not specify whether the possession was

with intent to sell the marijuana or with intent to deliver the marijuana. The record does reveal that one count arose from the first indictment and the other count arose from the second indictment. Both counts were Class E felonies. Pursuant to the plea agreement, the Defendant received two concurrent eighteen month sentences. The manner of service of those sentences, however, was to be determined by the trial court. The Defendant petitioned the trial court for alternative sentencing and judicial diversion, but after an evidentiary hearing, the trial court denied the Defendant's petitions and ordered the sentences served in the local workhouse. The Defendant now argues that the trial court erred in denying his petitions and ordering him to serve his sentences in incarceration. We agree that the Defendant was entitled to alternative sentencing, and we modify his sentences to service of ninety days incarceration followed by supervised probation. We affirm the trial court's denial of judicial diversion.

The evidence at the sentencing hearing revealed that on May 6, 1997, the Defendant "got drunk" and accidentally shot himself while "playing" with a gun. When police officers responded to the emergency call, they found some marijuana and a pipe on the Defendant's entertainment center. The officers subsequently obtained a search warrant and searched the Defendant's house, where they found five to ten small marijuana plants growing in a storage closet. The officers also discovered $377 cash, fluorescent grow lamps, a book on how to grow marijuana plants, drug paraphernalia, and a set of triple-beam scales. When asked why he had the scales, the Defendant explained, "I had some to check it and make sure I didn't get ripped off as far as what I got, and then I sold some to support what I did too."

Several months later, on August 24, 1997, police officers answered a domestic violence call at the Defendant's home. The officers obtained consent from the Defendant to search the home, where they found almost a pound of marijuana. They also found another set of scales.

The Defendant testified that he re-supplied himself with marijuana and scales because he suffered from an addiction to marijuana. He stated that he and his girlfriend together would smoke about an ounce of marijuana a day. He said that he had the marijuana for his own personal use and that he sold some of the marijuana to support his habit. When questioned by the trial judge, the Defendant admitted that he also sold some of the marijuana to make a profit. He also admitted that he continued to smoke marijuana until two months prior to his sentencing hearing. He informed the interviewers from Community Corrections that he could not pass a drug test because he was still using marijuana four or five times a month. The Defendant testified that he quit smoking marijuana about a week after meeting with personnel from Community Corrections and that he was working on overcoming his addiction. He said that he would like counseling to help him with his problem.

The Defendant is employed by American Building Maintenance. He is married, and he has a child. When asked why the judge should grant him probation instead of jail time, the Defendant stated, "I don't think he should waste taxpayer's money putting me behind bars when I could stay out and . . . work on getting my life back together and being a member of the community."

After hearing the evidence, the trial judge made several comments regarding the Defendant's testimony. He seemed most concerned about the Defendant selling marijuana and replenishing his

supply after the police first confiscated it. He also felt that the Defendant was not being completely truthful with the court until forced into certain testimony. These thoughts were expressed in the following statements made by the trial judge:

[H]is problem that he had smoking marijuana did not cause him to go out and get a whole batch of it to sell. See, that showed he just didn't have a problem that he was smoking it so much. He went out and got a larger amount that he had when they caught him the first time to sell it.

The problem wasn't him smoking it so much. He wanted to continue to selling [sic] to make money, apparently, and that's what he did. See, that's the way it went. It wasn't a situation where they went back and he had a small amount that he had in that house, and he was using because he couldn't get off it. He had his -- he had his shipment back in there for sale, and the money all over the house. Marijuana all in the refrigerator and places.

See that destroys that argument. The Court had problems believing him. He didn't want to come out with the truth. In fact, I had to go through what the truth should have been based on what he finally came out with if he was being candid with the Court. He was not. He was trying to minimize what he was doing.

I was so hooked on this marijuana, and that's why it was there, and that's why it was there the second time. He may have been hooked on it some, but he was in the big business of selling it too while being hooked, if he was hooked.

The trial judge then made the following findings of fact and conclusions of law:

The Court finds that the defendant did not tell the truth under oath. He told part of the truth. That's a finding of this Court. The Court further finds, as a trier of fact, that it would depreciate the seriousness of this offense if the Court grants this petition for alternative incarceration or probation or any type of diversion.

The Court also has to consider the deterrent effect that is involved where a person who is in the fairly large business of selling marijuana, the effect on others, his customers, if they find that he can get--don't have to go and do his time once being caught twice, before they could get one case handled. He's got a large amount the second time for sale.

It--that's what his customers and person [sic] that knew and bought for him and people that would dream of being in his situation, if they find out that he gets that type of treatment, it doesn't deter him or anyone else from getting into this business that's sort of lucrative. So the deterrent effect is important here.

And the Court further indicates that after he was caught with a large amount, more than he told us initially, half ounce, it was quite a bit, wasn't a pound, but it was quite a bit that he had throughout the house when he shot himself accidently.

And after they confiscate his scales and all of that stuff and the large amount that he had, he gets out of the hospital and gets at least nearly a pound more and replenishes a larger amount than he had before with scales again.

He had grow lights. He had a room set aside with grow lights. Grow lights costs [sic] some money to get those lights. But he had it set up to grow, had small

plants. We don't know whether he had harvested the year or two before the tall plants or not, and this was a new crop. We don't know that. . . .

And the Court also finds that he's still smoking marijuana up until a couple of months before we hear the petition, still smoking marijuana. Society would not benefit by the Court granting this. The defendant would not benefit because all that has happened so far in the case that he didn't plan to do right anyway.

Now, if he was hooked on marijuana and just needed it for his own use and was going to try to abide by the law the best he could except that this drive made him use some, why did he get a pound to use. That's the problem. He slapped the law in the face with the getting enough to sell again. The selling was his main aim to make money. I'm not disputing he may have been using it, and may--I don't know. He may have been hooked on it, but that didn't make him go out and buy in large amounts to sell too to get somebody else hooked on it. Didn't nobody [sic] make him do that.

The Court--and he states from the stand that we're wasting the taxpayer's money to incarcerate him. So I plead guilty wasting the taxpayer's money. I'm guilty. I throw myself on the mercy of the taxpayers.

The Court will have to deny the petition at this time.

JUDICIAL DIVERSION

The Defendant asserts that the trial court erred in denying him judicial diversion. We conclude that the question of judicial diversion was not properly before the trial court because the Defendant entered into a plea agreement which did not provide for the possibility of judicial diversion, and we also conclude that even if judicial diversion was properly before the court, the court did not err in denying it.

When a defendant who has not previously been convicted of a felony or a Class A misdemeanor is found guilty of or pleads guilty to a misdemeanor or a Class C, D, or E felony, the trial court has the option of deferring further proceedings without entering a judgment of guilty and placing the person on probation under reasonable conditions. See Tenn. Code Ann. § 40-35-313(a)(1)(A)-(B) (Supp. 1999). If the defendant does not violate any of the conditions of the probation, then upon the expiration of the probation period, the court shall discharge the defendant and dismiss the proceedings against him or her without court adjudication of guilt. See id. § 40-35-313(a)(2). The defendant may then have the official records of the proceedings expunged. See id. § 40-35-313(b).

Had the Defendant entered an open plea without any concessions on the part of the State, then undoubtedly he could have sought judicial diversion after pleading guilty. See id. § 40-35-313(a)(1)(A)-(B). Likewise, had the possibility of judicial diversion been made part of the plea agreement, then the Defendant could have sought judicial diversion after pleading guilty. See State v. Harris, 953 S.W.2d 701, 702 (Tenn. Crim. App. 1996). Here, the possibility of judicial diversion was not made part of the plea agreement, and the prosecutor asserted at the sentencing hearing that the Defendant was ineligible for diversion because he had accepted a plea offer for a fine of $2,000

and an eighteen month sentence, with only the manner of service of the sentence left to the discretion of the trial court. We agree with the argument of the prosecutor.

While judicial diversion has been referred to in cases as a "manner of service," see id., it is quite different in many respects. Judicial diversion affects the underlying charge or conviction as well as the manner in which a "sentence" is served. See State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). First, we note that judicial diversion is not listed as a sentencing alternative by the legislature for a person convicted of an offense. See Tenn. Code Ann. § 40-35-104(c); Anderson, 857 S.W.2d at 572. A person granted judicial diversion is not convicted because a judgment of guilt is never entered. See Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 1999). The person to whom judicial diversion is granted consents to being placed on probation, but that person is never actually sentenced for the crime charged. See id. If the person successfully completes the period of probation, then the person is discharged, the case is dismissed, and the official records may be expunged. See id. § 40-35-313(a)(2), (b) (Supp. 1999). The effect of such an expungement order "is to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." Id. § 40-35-313(b) (Supp. 1999).

We conclude that when a defendant agrees to accept a particular sentence with only the manner of service of that sentence to be determined by the trial court and without reserving the right to apply for judicial diversion as part of the plea agreement, then the defendant has agreed to forego the possibility of judicial diversion. A defendant who receives judicial diversion has been neither convicted nor sentenced. In a case in which the plea agreement calls for the trial judge to consider only the manner of service of the sentence, logic dictates that judicial diversion is not an option contemplated by the plea agreement.

In this case, the Defendant pleaded guilty to two Class E felonies, which carried possible sentences of one to two years incarceration. See id. § 40-35-112(a)(5). He agreed to an eighteen month sentence for each felony, which was in the middle of the range. The plea agreement provided that the "[s]uspension of the Defendant's sentence" was to "be determined by the Court, after a hearing." Because the agreement did not provide for the possibility of judicial diversion, we conclude that the issue of judicial diversion was not properly before the trial court.

Furthermore, even if judicial diversion had been a possibility for the Defendant, we would conclude that the denial of judicial diversion was not error. Because judicial diversion is not one of the enumerated sentence alternatives, there is no presumption of being a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995); Tenn. Code Ann. § 40-35-104(c). Whether a defendant should be granted judicial diversion is a matter within the sound discretion of the trial court, and this Court will not interfere with a refusal to grant judicial diversion if "'any substantial evidence to support the refusal' exists in the record." Anderson, 857 S.W.2d at 572 (quoting State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). In determining a defendant's suitability for judicial diversion, the court must consider the following criteria:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the

accused's physical and mental health, and (f) the deterrence value to the accused as well as others.

State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). The court should also consider whether judicial diversion will serve the interests of the public as well as the accused. See id.

These guidelines are the same as those applicable to determining suitability for probation, although they are more stringently applied in the judicial diversion context. See Bingham, 910 S.W.2d at 456. Because we have also determined that the Defendant is not entitled to full probation, we likewise would conclude that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion.

## ALTERNATIVE SENTENCING

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

After reviewing the transcript of the sentencing hearing, we conclude that the record does not demonstrate that the trial court gave due consideration and proper weight to the factors and principles set out under the sentencing law. The record shows that the trial court felt the sentence of incarceration was justified based on the seriousness of the offense and the deterrent effect the sentence would have on the Defendant and others, but it does not affirmatively show that the trial court considered any of the other sentencing factors. Accordingly, we review the sentencing decision de novo without the presumption of correctness.

The Defendant asserts on appeal that the trial court erred in denying his petition for alternative sentencing. A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration." Id. § 40-35-102(5). Thus, a defendant sentenced to eight years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. Because the Defendant is a Range I standard offender who was convicted of two Class E felonies and who does not have a prior criminal history, he is presumed to be a favorable candidate for alternative sentencing. See id. § 40-35-102(6).

Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated § 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See Ashby, 823 S.W.2d at 170; State v. Neely, 1 S.W.3d 679, 685 (Tenn. Crim. App. 1999). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(3)-(4).

Upon review of the record, we conclude that the presumption in favor of alternative sentencing has not been rebutted. Because the Defendant has no prior criminal history, confinement is not necessary to protect society from the Defendant, and measures less restrictive than confinement have not been frequently or recently applied unsuccessfully to the Defendant. See id. § 40-35-103(1)(A), (C). In addition, there was insufficient evidence presented that confinement was necessary to avoid depreciating the seriousness of the offense or that confinement was necessary to provide an effective deterrence to others. See id. § 40-35-103(1)(B).

Because a degree of deterrence is uniformly present in every case, "the significance of this factor 'varies widely with the class of offense and the facts of each case.'" State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997) (quoting State v. Michael, 629 S.W.2d 13, 14-15 (Tenn. 1982)). Thus, "[b]efore a trial court can deny alternative sentencing on the ground of deterrence, there must be some evidence contained in the record that the sentence imposed will have a deterrent effect within the jurisdiction." State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). The

finding of deterrence cannot be conclusory; it must be supported by proof in the record. <u>Ashby</u>, 823 S.W.2d at 170.  Here, the trial court found that confinement was needed to deter the Defendant from committing future acts and to deter the Defendant's customers from committing similar acts, but there was no proof offered at the hearing that confinement would have such a deterrent effect. Therefore, the trial court erroneously denied alternative sentencing on the basis of deterrence.

With respect to the seriousness of the offense, the trial court found it serious that the Defendant re-supplied himself with marijuana and scales after his original supply had been confiscated by the police, leading to more criminal charges.  He was also concerned that the Defendant was selling marijuana to make a profit.  However, as this Court stated in <u>State v. Bingham</u>,

> [i]n order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

910 S.W.2d at 454 (quoting <u>State v. Hartley</u>, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)); <u>see also</u> <u>State v. Zeolia</u>, 928 S.W.2d 457, 462 (Tenn. Crim. App. 1996).  Here, the Defendant pleaded guilty to two counts of possession of marijuana, a controlled substance, with the intent to sell or deliver.  The second count arose from the Defendant's actions in re-supplying himself with marijuana after his first supply was confiscated.  We first note that selling marijuana is inherently a part of the offense, <u>see</u> Tenn. Code Ann. § 39-17-417(a)(4); thus, the fact that the Defendant may have sold marijuana cannot make the offense as committed especially shocking, reprehensible, or offensive.  Also, while we are allowed to consider multiplicity of counts occurring close in time in evaluating sentencing factors, <u>see</u> <u>Zeolia</u>, 928 S.W.2d at 462; <u>State v Hicks</u>, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993), we do not believe that the Defendant's actions in committing two similar drug offenses close in time were so reprehensible and shocking that they outweighed all factors favoring a sentence other than total confinement.  The Defendant was convicted of two Class E felonies, which are among the least serious crimes according to the classification set forth by our legislature.  He committed non-violent offenses, which, in comparison to other offenses, are not among the most severe; thus, the Defendant is not a felon for whom incarceration is a first priority. <u>See</u> Tenn. Code Ann. § 40-35-102(5).  Accordingly, we find that the presumption of alternative sentencing has not been rebutted by the seriousness of the offense or any other factor demonstrated in the record in this case.

Having found that the presumption of alternative sentencing has not been rebutted, we must now determine which sentencing alternative is appropriate. Because the Defendant's sentences were under eight years and because the Defendant is not otherwise disqualified, he is eligible for probation under our statutory system. <u>See</u> <u>id.</u> § 40-35-303(a). Probation is to be automatically considered as a sentence alternative for eligible defendants; however, "'the defendant is not automatically entitled to probation as a matter of law.'" <u>State v. Hartley</u>, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991)

(quoting Tenn. Code Ann. § 40-35-303 sentencing comm'n comments); see also Tenn. Code Ann. § 40-35-303(b). The burden of proving suitability for probation rests with the defendant. See Tenn. Code Ann. § 40-35-303(b). If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but shall suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See id. § 40-35-303(c). Placement on probation following the service of a period of confinement is an alternative to a "straight time" sentence and is commonly referred to as split confinement. See State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999); Bingham, 910 S.W.2d at 457; Hartley, 818 S.W.2d at 375; Tenn. Code Ann. § 410-35-306.

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620-21 (Tenn. 1974); see also State v. Michael, 629 S.W.2d 13, 15 (Tenn. 1982); Bonestel, 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. See Tenn. Code Ann. § 40-35-103(5).

At the time of the sentencing hearing, the Defendant was twenty-one years old. He has no criminal history other than the current convictions. He is married, and he has a child. He has a job, and he has expressed a desire to obtain counseling to help him overcome his drug habit. He was candid with the interviewers from Community Corrections when he told them that he could not pass a drug test because he was still using marijuana four or five times a month. We believe that these factors indicate that the Defendant is a good candidate for rehabilitation and probation.

Nevertheless, the Defendant has also shown some negative attributes. First, although the Defendant admitting using and selling marijuana, the trial court found that the Defendant was not being completely truthful on the stand. We have previously held that the untruthfulness of a defendant can be the basis for a denial of probation. See State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987). As we acknowledged in State v. Dowdy, 894 S.W.2d 301 (Tenn. Crim. App. 1994),

> [i]t has been widely held that the defendant's truthfulness while testifying on his own behalf is probative of his attitudes toward society and prospects for rehabilitation and is thus a relevant factor in the sentencing process. . . . [A] defendant's credibility and willingness to accept responsibility for the offense are circumstances relevant to determining his rehabilitation potential.

Id. at 306 (citations omitted). Thus, the Defendant's lack of complete candor on the witness stand weighs against full probation because it weighs against the Defendant's rehabilitation potential. Also, the circumstances of the offense indicate that the Defendant is not easily swayed from continuing to commit criminal offenses. After the police first found marijuana in his home and while criminal charges were pending, the Defendant re-supplied himself with even more marijuana.

While multiple criminal charges were pending, the Defendant was still using marijuana. After the Defendant pleaded guilty and while he was awaiting the sentencing hearing, he was still using marijuana.

We conclude from our review of the record that the Defendant should be placed on probation following partial service of his sentences pursuant to Tennessee Code Annotated § 40-35-306, which governs split confinement. We believe that this sentence is the least severe measure necessary to achieve the purposes of punishment and rehabilitation, and it also conserves resources because the Defendant will not serve his entire sentence in incarceration. See Bingham, 910 S.W.2d at 457; Hartley, 818 S.W.2d at 375. We therefore modify the Defendant's eighteen month sentences to be served in split confinement for ninety days followed by supervised probation. This case is remanded to the trial court to determine the terms and conditions of probation.

## CONCLUSION

We conclude that the State failed to rebut the presumption that the Defendant is a favorable candidate for an alternative sentence. Therefore, we modify the Defendant's eighteen month sentences to be served in split confinement in which the Defendant is to serve ninety days incarceration with the remainder served on supervised probation. This case is remanded to the trial court to determine the terms and conditions of probation.