| Indictment | Charge | Sentence | Manner of Service |
|---|---|---|---|
| 93–733 | Rape | 11 years | consec. to 93–733B, and 734E |
| 93–733B | Incest | 5 years | consec. to 733, 734E |
| 93–736A through 93–736Q | | | |
| 18 cts. Failure to send Children to School | | 30 days | concur. with all misd. consec. to 733, B, C, and E |
| 93–734A | Assault | 11–29 | concur. with 734C, D, F, H, and 94–101 consec. to 733, B, 734 E, 735, 735 A, B, C, D, and E |
| 743C | Child Abuse | 11–29 | concur. with 734A, D, F, H, and 94–101 consec. to 733, B, 734 E, 735, A, B, C, D and E |
| 734D | Child Abuse | 11–29 | concur. with 734A, C, F, H, and 94–101 consec. to 733, B, 734 E, 735, A, B, C, D, and E |
| 734E | Aggr. Child Abuse | 10 years | consec. to 93–733, and B. |
| 734F | Child Abuse | 11–29 | concur. with 734A, C, D, H, and 94–101 consec. to 733, B, 734 E, 735, A, B, C, D, and E |
| 94–101 | Child Abuse | 11–29 | concur. with 93–734 A, C, D, F, and H consec. to 733, B, 734 E, 735, A, B, C, D, and E |
| 734H | Child Abuse | 11–29 | concur. with 734A, C, D, F, and 94–101 consec. to 733, B, 734E, 735, A, B, C, D, and E |
| 93–735 | Child Negl. | 11–29 | concur. with 735A, B, C, D, and E consec. to 733, B, 734E, 734A, 734C, D, F, 94–101, and 734 H |
| 93–735A | Child Negl. | 11–29 | concur. with 735, B, C, D, and E consec. to 733, B, 734E, A, C, D, F, H, and 94–101 |
| 93–735B | Child Negl. | 11–29 | concur. with 735, A, C, D, and E consec. to 733, B, 734E, A, C, D, F, H, and 94–101 |
| 93–735C | Child Negl. | 11–29 | concur. with 735, A, B, D, and E consec. to 733, B, 734E, A, C, D, F, H, and 94–101 |
| 93–735D | Child Negl. | 11–29 | concur. with 735, A, B, C, and E consec. to 733, B, 734E, A, C, D, F, H, and 94–101 |
| 93–735E | Child Negl. | 11–29 | concur. with 735, A, B, C, and D consec. to 733, B, C, 734E, A, C, D, F, H, and 94–101 |

**STATE of Tennessee, Appellant,**

v.

**Eric Lemart HARRIS, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 30, 1996.

No Permission to Appeal Applied for to the Supreme Court.

David F. Bautista, District Public Defender, Jeffery C. Kelly, Asst. Public Defender, Johnson City, for Appellee.

Charles W. Burson, Attorney General and Reporter, Hunt S. Brown, Assistant Attorney General Criminal Justice Division, Nashville, David E. Crockett, District Attorney General, Joe Crumley, Asst. District Attorney General, Jonesborough, for Appellant.

## OPINION

HAYES, Judge.

The appellee, Eric LeMart Harris, was indicted by the Washington County Grand Jury in a three count indictment, charging him with two misdemeanor sales of marijuana and one class E felony sale of marijuana. Pursuant to the negotiated plea agreement, the appellee received a sentence of one year for the felony conviction and a sentence of eleven months, twenty-nine days for each misdemeanor conviction. All three sentences were to run concurrently. The manner of service of the sentence, including the availability of judicial diversion, was submitted to the trial court for determination. Following a sentencing hearing, the trial court granted judicial diversion. Tenn.Code Ann. § 40–35–313(a)(1) (1995 Supp.) The State appeals this sentencing decision, contending that the trial court abused its discretion in granting diversion. Specifically, the State argues that the appellee is ineligible because the plain language of the statute, Tenn.Code Ann. § 40–35–313(a), commonly referred to as judicial diversion, limits diversion to only one offense.

After consideration of this issue, we affirm the decision of the trial court.

## I. Background

On January 20, 1995, the appellee pled guilty to the following offenses: (1) sale of 8.7 grams of marijuana on May 3, 1993, a class A misdemeanor, (2) sale of 18.0 grams

of marijuana on December 8, 1993, a class E felony, and (3) sale of 6.6 grams of marijuana on January 10, 1994, a class A misdemeanor. A sentencing hearing was held on August 11, 1995. At the hearing, the proof established that the appellee was twenty-two years old and, prior to this prosecution, was a senior at East Tennessee State University, majoring in Criminal Justice. The appellee was unable to complete his last semester, because his arrest occurred during final exams; however, he indicated his intention to obtain a degree. Presently, he is employed as a manager at McDonald's restaurant where he oversees "twenty to fifty" crew members. He graduated with honors from Seymour High School, having attained a 3.40 GPA. In high school, he was a member of the Beta Club, the Honor Society, and numerous other organizations. Many letters of support from friends and former teachers were filed on his behalf. He also received numerous athletics honors in high school. In 1991, he received a "full football scholarship" to E.T.S.U. He was released from the football team after successfully appealing a reduction in his full scholarship to a room and board scholarship.[1] In college, the appellee's academic performance was less than stellar. The record indicates an overall GPA of 1.8 due in part to five "F's" received his last semester. A former football coach at E.T.S.U. testified on behalf of the appellee. The witness testified that he "found [the appellee] to be a very bright, a very pleasant young man, [who] never gave us any discipline problems." He added that "[the appellee] was a very straightforward young man. I felt he was a person of high character."

With respect to the instant offenses, the appellee repeatedly denied selling marijuana, although he did acknowledge his involvement in the three transactions. The appellee explained that a friend of his, "Tanya," was selling marijuana. She asked the appellee if he knew anyone who wanted to purchase some marijuana. Another friend, "Loretta," asked the appellee if he knew where she could buy some marijuana. Unbeknownst to the appellant, Loretta was a Drug Task Force informant. The appellee contacted Tanya to arrange the sale. Because Loretta did not know Tanya, she asked the appellee to drive her to Tanya's to "get it." The appellee testified that he was "doing a favor for [Loretta]." He did not receive "any money out of the deal," nor did he receive any marijuana. This arrangement occurred on three different dates, May 3, 1993, December 8, 1993, and January 10, 1994. He stated that "[he] didn't think [he] was doing anything wrong at the time, but, in actuality, yes, I was because I was . . . a conspirator."

The trial court made the following findings of fact and conclusions of law:

1. The appellee has had numerous opportunities to "slip up" since his arrest and "he . . . appears to have not strayed."

2. The appellee has multiple offenses. "Two of them pled to misdemeanors."

3. The appellee is a "truthful and forthright witness."

4. The appellee "plays about as a minor a role in this as possible."

5. The appellee did not receive money or drugs from his involvement in the transaction.

6. The appellee does not use drugs.

7. "[H]is criminal conduct neither caused nor threatened serious bodily injury."

8. "He has absolutely no prior record. They can't even find a speeding ticket."

9. The appellee has an outstanding social history, both academically and athletically. Moreover, the appellee shows a great deal of incentive to achieve his goals and ambition in bettering himself.

10. Deterrence is not a relevant consideration.

11. "[The appellee] has very likely already learned as much as he's going to from this process. . . . He's been in jail, and comes very . . . as recognizing that what he did was just pretty darn stupid, and, his sincerity . . . is without question."

Considering these factors, the trial court determined that it was in the best interest of the public "that the system not ruin the life

---

1. The appellee contends that he developed tendinitis in his knee from playing on an artificial turf. Rehabilitative treatment was received for this injury.

of ... a younger person." The court commented on the appellee's plans for the future and how a criminal record could "destroy a number of ... careers that he may choose to pursue." Consequently, the court ascertained that,

> For a person with this degree of potential for rehabilitation, and the ... ability and success that he has shown, the good character, the Court finds that the interest of the public would be far better served to place him on probation with judicial diversion and not have a felony on his record.

Accordingly, the court granted judicial diversion in each of the three counts.[2]

## II. Analysis

In this appeal, the State contends that the trial court abused its discretion by granting the appellee judicial diversion on all three counts. Specifically, the State argues that the plain language of the judicial diversion statute, Tenn.Code Ann. § 40–35–313(a)(1), limits the availability of judicial diversion to a single offense.[3] Tenn.Code Ann. § 40–35–313(a)(1) provides, in relevant part as follows:

> If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to *a misdemeanor which is punishable by imprisonment or a Class C, D, or E felony*, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require and for a period of time not less than the period of the maximum sentence for the misdemeanor with which he is charged, or not more than the period of the maximum sentence of the felony with which he is charged....

(Emphasis added).

The introductory language of the statute addresses the eligibility criteria for judicial diversion. It provides that (1) the defendant cannot have a *prior* felony or class A misdemeanor conviction, and (2) the offense sought to be diverted can be no greater than a class C, D or E felony or a misdemeanor punishable by imprisonment. Sentencing Commission Comments, Tenn.Code Ann. § 40–35–313. *See State v. Bonestel,* 871 S.W.2d 163, 168 (Tenn.Crim.App.1993). The contested language of the statute is the following: "[A]ny person ... who pleads guilty to *a* misdemeanor ... or *a* class C, D, or E felony...." Contrary to the State's position, we construe this language as a limitation on the *classes* of offenses eligible for judicial diversion rather than a limitation on the *number* of offenses eligible for this sentencing alternative. In other words, the sentencing court may grant diversion for multiple offenses, as long as each individual diverted offense before the court is *a* misdemeanor or *a* class C, D, or E felony and, the defendant satisfies the first (1) eligibility criterion.

In construing the language of the statute and legislative intent, we look first to the statute itself, and rely, when possible, upon the ordinary meaning of the language and terms used, refraining from any forced or subtle construction to limit or extend the statute's meaning. *State v. Smith,* 893 S.W.2d 908, 917 (Tenn.1994), *reh'g denied, State v. Smith,* 1995 WL 71297 (Tenn.1995),

---

**2.** The court entered the following conditional judgments against the appellee for the three counts: (1) sale of marijuana, class A misdemeanor, 11 months 29 days probation; (2) sale of marijuana, class E felony, two years probation; and (3) sale of marijuana, class A misdemeanor, 11 months, 29 days probation. The misdemeanor sentences were to run concurrently, and the misdemeanor sentence for count 1 and the felony sentence for count 2 were to run consecutively, for a total effective sentence of two years, eleven months, 29 days probation.

**3.** *See State v. Williams,* No. 02C01–9210–CR–00237, 1993 WL 295060 (Tenn.Crim.App. at Jackson, Aug. 4, 1993) (affirming diversion granted to defendant who entered pleas on two separate occasions); *see also, State v. Evitts,* 915 S.W.2d 468 (Tenn.Crim.App.1995) (revocation of diversion); *State v. Ware,* No. 01C01–9309–CC–00318, 1994 WL 406165 (Tenn.Crim.App. at Nashville, Aug. 4, 1994). *Cf. State v. Blackburn,* No. 01C01–9310–CR–00340, 1995 WL 295276 (Tenn.Crim.App. at Nashville, May 12, 1995) (affirming denial of pretrial diversion, remanded with recommendation of judicial diversion as alternative for defendants charged with multiple offenses). While this precise issue has not been previously addressed on appellate review, we note that the appellate courts of this state have routinely granted tacit approval to diversion for those charged with multiple offenses.

*cert. denied,* —— U.S. ——, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). Additionally, when construing a statute, one must remain cognizant of the purpose of the statute and must construe the statute in accordance with that purpose. *See West American Ins. Co. v. Montgomery,* 861 S.W.2d 230, 231 (Tenn. 1993). The purpose of judicial diversion is to avoid placing the stigma and collateral consequences of a criminal conviction on an offender, in addition to providing the offender the means to be restored fully to useful and productive citizenship.[4] *State v. Porter,* 885 S.W.2d 93, 95 (Tenn.Crim.App.1994). This purpose would be thwarted if judicial diversion was denied to those defendants who had never received the opportunity to reform yet were charged with multiple offenses. Thus, in conformity with the common practice of the courts of this state and the purpose of diversion, we conclude that judicial diversion is available to a statutorily eligible defendant charged with multiple offenses.

■■■ Next, the State contends that the trial court abused its discretion in placing the appellee on judicial diversion. The decision of whether to place a defendant on judicial diversion is within the sound discretion of the trial court. *Bonestel,* 871 S.W.2d at 168. This decision will not be reversed on appeal if there is any substantial evidence in the record to support the trial court's determination. *Id.* First, the record reflects that the appellee meets the eligibility requirements set forth in Tenn.Code Ann. § 40–35–313. Second, in making its decision to grant diver-

sion, the trial court properly considered (1) the appellee's amenability to rehabilitation; (2) the circumstances of the offense; (3) the appellee's criminal record; (4) the status of the appellee's mental and physical health; (5) the appellee's social history; and (6) the deterrence value to the appellee and to others. *Bonestel,* 871 S.W.2d at 168 (citing *State v. Hammersley,* 650 S.W.2d 352, 355 (Tenn. 1983)). Finally, the trial court determined that diversion would better serve the ends of justice, as well as the interests of the appellee and the public. *Id.* (citing *Hammersley,* 650 S.W.2d at 355). A review of the record reveals no abuse of discretion on behalf of the trial court.

## III. Conclusion

After a review of the record and the applicable law, we conclude that a grant of judicial diversion is available to an eligible defendant with multiple offenses. Thus, judicial diversion was available to the appellee in the present case. Having concluded that the trial court did not abuse its discretion in granting judicial diversion in this case, the judgment is affirmed.

JONES, P.J., and SUMMERS, J., concur.

---

4. In this regard, it is similar to the purpose of pretrial diversion. *See State v. Anderson,* 857 S.W.2d 571, 572 (Tenn.Crim.App.1992). A defendant is *not ineligible* for a pretrial diversion program by reason of multiple offenses. *State v. Hayes,* C.C.A. No. 5, 1987 WL 7979 (Tenn.Crim. App. at Jackson, Mar. 18, 1987) (citing Tenn. Code Ann. § 40–15–105). Logic would dictate that, if the purpose of both statutes is similar, and if one extends eligibility to defendants with more than one offense, then it follows that the other would do the same.