# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 6, 2009 Session

## STATE OF TENNESSEE v. CORY WILLIS

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8415     Joseph H. Walker, III, Judge**

_____

**No. W2008-02720-CCA-R3-CD  - Filed September 15, 2010**

_____

The Defendant-Appellant, Cory Willis, pled guilty in the Circuit Court of Lauderdale County to unlawful photographing in violation of privacy, a Class A misdemeanor.  At the sentencing hearing, the trial court denied Willis's request for judicial diversion and sentenced Willis to eleven months and twenty-nine days supervised probation.  Willis claims on appeal that the trial court erred in denying his request for judicial diversion.  Upon review, we reverse the judgment of the trial court and remand this matter for a resentencing hearing consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Barbara A. Deere, Dyersburg, Tennessee, for the Defendant-Appellant, Cory Willis.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Willis was arrested for unlawful photographing in violation of privacy.  The affidavit of complaint alleged that Willis photographed the victim, H.J.,[1] at a tanning salon.  Willis pled guilty to the offense as charged in the Circuit Court of Lauderdale County.  The specific facts supporting the charge were set forth by the State at the guilty plea hearing:

---

[1]It is the policy of this court to omit the full name of minor victims.

Had this matter gone to trial, the State would have shown on December 17th of '07 that Mr. Willis was at the Tangles and Tans here in Ripley, that a juvenile white female had come to the police department and reported that while she was tanning . . . Mr. Willis . . . was in the booth next to her and that he came–reached over the top of an eight[-]foot wall with a cell phone and was taking pictures of her while she was unclothed, in the process of getting in and out of the tanning bed. That the subject, Mr. Willis, was confronted by the employees of the tanning business as well as the juvenile herself and stated that he was merely trying to get a signal to send a text message. He was identified both by the juvenile and by the employee and his name was signed in on the registry as far as being in the booth next to the juvenile.

The trial court determined that Willis was competent, accepted his best interest plea, and deferred its diversion decision to a later date.

An Investigation Report was prepared by the Board of Probation and Parole. Willis was interviewed by an investigating officer at the Lauderdale County Justice Center and continued to protest his innocence. He claimed he raised his cellular phone at the tanning booth to get a better signal and that no pictures were on his phone when it was confiscated. Willis explained that he requested judicial diversion so that he could continue receiving medical treatment and visit his two stepsons in Minnesota.

The Investigation Report detailed that Willis did not have a criminal record other than minor traffic violations and referred to a Tennessee Bureau of Investigation document which stated that Willis was an eligible candidate for diversion. The report further stated that Willis claimed he did not use illegal drugs and drank alcoholic beverages on occasion. Willis was divorced and lived with his brother. He entered the military in 2002, was honorably discharged in 2008, and was classified as a disabled veteran. Willis was considered one hundred percent disabled and received disability benefits from the Social Security Administration.

A victim impact statement was attached to the report. The victim described her personal reaction to the incident as follows:

I felt dirty afterwards knowing that Mr. Willis saw me naked. I am more suspicious of people now. It was really hard for me to go back to the tanning place because I always feel like someone is watching me. I also feel weird in dressing rooms and even public restrooms now. I was only 16 when this happened and I never knew people could be so nasty.

The victim attached a document to the victim impact statement with additional comments:

> I am really scared that Mr. Willis was actually stalking me at the time of the incident because he was almost always at the tanning place when I was. I usually tanned right after school and that's when I would see him, but the day of the incident I went to tan about an hour and a half earlier than usual and he was there again. The tanning records proved that he was there at the same time I was most of the time. It just seems like too much of a coincidence that he was there at the same time even when I went earlier than usual.
>
> Mr. Willis got so angry when I confronted him that day at the tanning place. It still frightens me when I think about it. I was really scared that he might hurt me. Even now I'm constantly afraid of what might happen if I were to run into him.
>
> I think that Mr. Willis should get the maximum sentence for this crime. I know that he was either taking pictures or videos of me naked because I could see the images moving on the front of his cell phone. If he had not deleted them, he could have probably been charged with child pornography and that would make him a sex offender–which in my opinion is what he really is. I also think that he should not get judicial diversion. I don't think that his record should be expunged because people like him continue to do things like this, and when he does something like this again to someone else the police will have no record of this to see that there is a pattern to his actions. I just want him to realize that he can't do something like this to me or anyone else and just get away with it. He should have some type of real punishment.

**Sentencing Hearing**. At the start of the hearing, the State told the trial court that the victim was present, but did not wish to testify. The State asked the trial court to review the victim impact statement.

Defense counsel asserted that Willis was deserving of judicial diversion. Counsel informed the trial court that she had extensive medical records for Willis. Willis was injured during active military duty in Iraq. Defense counsel told the trial court that she had a letter from a doctor stating that Willis was "not in control of his post-traumatic stress disorder." Defense counsel said Willis would not testify at the sentencing hearing upon the direction of "medical professionals."

Willis's mother, Teresa Willis ("Teresa"), was the only witness to testify. She said that her son was injured during combat in February of 2005 and described the medical treatment Willis received since returning home:

> He has had two surgeries, one on each shoulder. He has had physical therapy on both shoulders. Well, he's had occupational, physical, and he's in a new form of therapy that I don't really understand what it is. He's been through all kinds of x-rays, MRIs, CAT scans for brain trauma that he has. And they're fixing to start working on his hip now because they will only work on one thing at a time.

Teresa said Willis had been to at least three hundred doctor's appointments since 2005. The doctors suggested that Willis go to a tanning booth because it helps relax muscles. Teresa said Willis "would try to go every day if possible, sometimes twice."

Teresa testified that Willis was on medication. She said Willis went through periods of depression and anger. She was questioned about Willis's current condition, and she responded, "He has good days and bad days, more good than bad." Teresa said Willis's family provided a support group for him. She did not recall Willis ever being in trouble with the law. Teresa believed Willis would comply with a court order prohibiting contact with the victim. She testified that he no longer went to tanning booths.

Willis's medical records were introduced as an exhibit to the hearing. The trial court asked the defense if Willis suffered from any mental injuries other than post-traumatic stress disorder. Defense counsel responded:

> Yes, sir, there's mental counseling. Part of the post-traumatic stress right now I believe with him is dealing with his injuries and what's happened to him. And, Your Honor, he does have a brain injury that's documented in those records.

The trial court then issued its ruling, denying Willis's request for judicial diversion. Willis was sentenced to eleven months and twenty-nine days in county jail; however, this sentence was suspended to supervised probation. Willis filed a timely notice of appeal.

## ANALYSIS

Willis claims the trial court erred in denying his request for judicial diversion. First, he argues that the State violated its agreement not to oppose judicial diversion by asking the trial court to consider the victim impact statement. Second, Willis claims the trial court did

not consider all of the relevant factors or explain on the record how it weighed these factors. Lastly, he argues that the trial court improperly weighed the relevant factors. The State does not address Willis's first claim about its agreement not to oppose judicial diversion. In responding to the latter claims, the State contends that the trial court weighed the appropriate factors and properly denied judicial diversion.

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A) (2007). A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i) (2007). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. Id. § 40-35-313(a)(2) (2006). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Id. § 40-35-313(b) (2007).

Whether to grant or deny a request for judicial diversion lies within the trial court's sound discretion. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citation omitted). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). This court will conclude that the trial court did not abuse its discretion if the record contains "'any substantial evidence to support the refusal.'" State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting Hammersley, 650 S.W.2d at 356).

The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). The trial court may consider the following additional factors: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement." State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citations and internal quotation omitted). The trial court must weigh all of the

factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

Willis's first argument is that the State violated its agreement not to oppose judicial diversion. He asserts that while the case was before the General Sessions court, the State "refused diversion . . . but agreed not to oppose judicial diversion at the Circuit Court level." Willis argues that the State violated this agreement at the sentencing hearing by asking the trial court to consider the victim impact statement, which advocated against judicial diversion.

Willis's claim is problematic because the record contains no evidence that the State agreed not to oppose judicial diversion. The record includes several documents from the general sessions court; however, they do not mention any such agreement. The State did inform the trial court during the guilty plea hearing that Willis requested judicial diversion; however, the State simply asked the trial court to defer its sentencing decision until after the necessary reports were prepared. Because the record contains no proof regarding the existence of an agreement, we conclude that Willis is not entitled to relief on this issue.

Next, Willis argues that the trial court failed to consider all of the relevant factors in denying judicial diversion. He also contends that the trial court failed to state on the record how it weighed the relevant factors. The State asserts that the trial court did discuss and weigh the various factors. In denying judicial diversion, the trial court stated:

> The Court recalls the stipulated statement of facts at the entry of the plea. I've reviewed the presentence report, the victim impact statement, considered the principles of sentencing.
>
> The Court doesn't feel like this really is a good case for diversion due to the nature of the case. I don't believe there's a good explanation for his conduct from the matters that have been presented, post-traumatic stress disorder or the physical injuries, for what he was doing, especially telling–and I agree with the assessment of the victim in the matter, that he could have been charged I believe with yet more serious offenses perhaps due to his actions with a minor.

In viewing these findings, it is unclear whether the trial court considered the seven factors outlined by this court in Electroplating, Inc., 990 S.W.2d at 229. Because Willis was an eligible candidate for judicial diversion, the trial court had a duty to explain on the record how it weighed the seven factors in reaching its decision. In Electroplating, Inc., this court stated:

> [T]he record must reflect that the court has weighed all of the factors in reaching its determination. Bonestel, 871 S.W.2d at 168 (citations omitted). The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others.

Id.; see also Cutshaw, 967 S.W.2d at 344 ("[A] trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration."). Here, the trial court considered the circumstances of the offense and Willis's physical and mental health. It also appeared to factor the interests of the public by acknowledging that Willis could have been charged with a more serious offense. The trial court did not, however, reference the four remaining factors. It failed to mention Willis's amenability to correction, his criminal record, his social history,[2] or the deterrence value to Willis and others. Most importantly, there is no explanation for how the factors favoring the denial of diversion outweighed the factors favoring diversion.

Because the record shows that the trial court failed to consider all of the factors appropriate for judicial diversion and failed to weigh all of these factors in determining whether to grant diversion, we are unable to determine whether the trial court abused its discretion. Accordingly, we are compelled to reverse the judgment of the trial court and remand the case for a sentencing hearing in order for the trial court to explain adequately on the record why the appellant was denied judicial diversion and why the factors relied upon outweigh the others. See State v. Lewis, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997) (concluding that "[b]ecause the trial court failed to consider all of the factors appropriate to the grant or denial of judicial diversion, and because its statement of the reasons for denial is vague and conclusory, we find the record inadequate to allow appropriate appellate review.").

**CONCLUSION**

---

[2]The trial court did acknowledge that Willis was receiving counseling when it subsequently discussed the terms of his probation. Based on this acknowledgment alone, we cannot conclude that the trial court considered Willis's social history in denying judicial diversion.

Upon review, we reverse the trial court's judgment regarding sentencing and remand the case for a resentencing hearing on all issues regarding the length and manner of sentence, including Willis's application for judicial diversion.

_____
CAMILLE R. McMULLEN, JUDGE