# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 18, 2010 Session

## STATE OF TENNESSEE v. JOSEPH W. DENTON

**Appeal from the Circuit Court for Putnam County**
**No. 08-0777     David Patterson, Judge**

---

**No. M2009-02546-CCA-R3-CD - Filed October 19, 2010**

---

The Defendant, Joseph W. Denton, pleaded guilty to one count of forgery and one count of impersonation of a licensed professional, both Class E felonies. Under the terms of the plea agreement, he received concurrent terms of two years as a Range I, standard offender to be served on probation. After a sentencing hearing, the trial court denied the Defendant's request for judicial diversion. He challenges that ruling on appeal. After a review of the record, we affirm the judgments of the Putnam County Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Jason R. Grubb, Beaver, West Virginia, for the appellant, Joseph W. Denton.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

A Putnam County grand jury returned a five-count indictment against the Defendant, charging him with one count of forgery, a Class E felony, three counts of impersonating a licensed professional, a Class E felony, and one count of theft of property valued at $1,000 or more but less than $10,000, a Class D felony. See Tenn. Code Ann. §§ 39-14-103, -14-105, -14-114, -16-302. Thereafter, the Defendant filed an application for pre-trial diversion. The district attorney general denied the application, and the Defendant sought review in the

trial court. The trial court found that the district attorney general had not abused his discretion.

Subsequently, on November 4, 2009, the Defendant entered a guilty plea to one count of forgery and one count of impersonation of a licensed professional. At the guilty plea hearing the State provided a factual basis for the plea. The prosecutor recited the events as follows:

> [A]s to the forgery count, proof would be that during October 2007 [the Defendant] went into the business of Mr. Arnold Lefkovitz, who is an attorney in Putnam County. The [S]tate would offer proof that he would present himself as an attorney at that time, presenting a card from the Board of Professional Responsibility of the Tennessee Supreme Court with his signature on it, . . . Bar No. [ ]. Subsequent investigation revealed that that is a bar number belonging to Mr. Patrick Denton, who is a practicing attorney in East Tennessee. . . .
>
>          . . . .
>
>          . . . As to count two, . . . the proof would be that on April 30th, [the Defendant] appeared in Putnam County General Sessions Court and represented himself as an attorney for Mr. Bobby Dowell and entered a plea of guilty on a domestic assault case and indeed signed the plea form as his attorney of record.

Pursuant to the terms of the plea agreement, the Defendant, a Range I, standard offender, received a sentence of two years at 30% for each offense, which sentences were to be served concurrently with one another and on probation. Only the availability of judicial diversion was submitted to the trial court for determination.

A hearing was held immediately following the Defendant's guilty plea. Barbara Allen, a probation officer for the State of Tennessee, testified that she prepared a presentence report in the Defendant's case; the report was prepared for pre-trial diversion purposes. Ms. Allen discovered that the then thirty-three-year-old Defendant did not have a prior criminal record other than an arrest for failing to appear on the instant offenses and an arrest for violation of an order of protection. Ms. Allen did not know the disposition of these charges. As part of Ms. Allen's investigation, the Defendant was administered a drug test, and no drugs were detected in his system.

The Defendant reported that he was in excellent physical and mental health. In 2005, he graduated with a bachelor of arts degree from the University of Tennessee. The Defendant stated that he was employed in computer support for the University of Tennessee from July 2005 until August 2007. According to the Defendant, he resigned that job to move to Cookeville to be with his wife, who was caring for her terminally ill mother. At the time Ms. Allen prepared the report, the Defendant was not employed.

Ms. Allen also took statements from the two attorneys who hired the Defendant (Mr. Lefkovitz and Mr. Will Roberson) after he claimed to be a licensed attorney, from Rebecca Jared, a "client" represented by the Defendant, and from the attorney whose bar number the Defendant utilized (Mr. Patrick Denton). Mr. Lefkovitz cited the damage done to his practice and his reputation. Mr. Roberson told of his disappointment in the Defendant for his misrepresentations. Ms. Jared relayed the emotional impact caused by the Defendant's representation of her in a case involving her children. All expressed opposition to the Defendant being granted pre-trial diversion.

Following the introduction of the presentence report, the State called Tennessee Bureau of Investigation (TBI) Agent Dan Friel to testify about his investigation of the case. Agent Friel spoke with Arnold Lefkovitz, who supplied him with a copy of an attorney bar card signed by the Defendant and a copy of a business card used by the Defendant, representing himself as an attorney. The bar card reflected a bar number of [ ], which was later determined to belong to a Mr. Patrick Denton, a prosecutor in East Tennessee. Mr. Patrick Denton had no knowledge of the Defendant or his activities.

Agent Friel also looked through the records of the Putnam County General Sessions Court and found a petition for acceptance of a guilty plea to domestic assault in the case of State versus Bobby Wayne Dowell. The Defendant had signed the document as the attorney of record. The Defendant acknowledged to Agent Friel that he acted as the attorney for Mr. Dowell in entering the guilty plea. When the Defendant was representing another "client" in Wilson County, the clerk asked the Defendant for his bar card, and the Defendant provided the forged card. The clerk looked up the number and, after discovering the bar number did not belong to the Defendant, contacted the district attorney's office.

At the conclusion of the hearing, the trial court denied the Defendant's request for judicial diversion. He now appeals.

**Analysis**

The Defendant argues that the trial court erred by denying judicial diversion.[1] Specifically, he argues that the trial court: (1) placed "disproportionate weight . . . on a single factor"—the circumstances of the offense, impersonation of a lawyer rather than some other professional; and (2) improperly relied on a "non-factor"—the Defendant's lack of remorse, in its decision to deny judicial diversion. He also states that the trial court did not properly explain why the negative factors outweighed the positive factors.

"Judicial diversion is a legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). The effect of discharge and dismissal under the diversion statute "is to restore the person . . . to the status the person occupied before such arrest or indictment or information." Id. (citing Tenn. Code Ann. § 40-35-313(b) (1997)).

A criminal defendant is eligible for judicial diversion only if he has been convicted of a misdemeanor or a class C, D, or E felony, and he must not have been previously convicted of a felony or a Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a)(1)(A). However, eligibility under the diversion statute does not ensure the grant of diversion. Indeed, the decision of whether to place a defendant on judicial diversion is within the sound discretion of the trial court. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996). Thus, upon review by an appellate court, if "any substantial evidence [exists in the record] to support the refusal," the decision of the trial court will be upheld and this court will not revisit the issue. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

In making the determination of whether to grant judicial diversion, the trial court must consider the following factors: (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the status of the accused's physical and mental health; and (f) the deterrence value to the accused as well as others. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997) (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). The trial court should also consider whether judicial diversion will serve the ends of justice—the

---

[1] In his appellate brief, the Defendant also challenged the denial of pre-trial diversion. However, at oral argument in this matter, defense counsel conceded that the issue had not been properly reserved for our review. See generally State v. Kyra Robinson, No. M2009-00694-CCA-R3-CD, 2010 WL 1221403, at *4-5 (Tenn. Crim. App, Nashville, Mar. 30, 2010) (holding that a defendant, who forgoes an interlocutory appeal of the district attorney general's decision denying pre-trial diversion and who, thereafter, pleads guilty, has no appeal of pre-trial diversion under Tennessee Rule of Criminal Procedure 3(b), and this Court lacks jurisdiction to entertain this issue).

interests of the public as well as the accused.  Id.  Additional factors which may be considered include a defendant's attitude, behavior since his arrest, home environment, current drug usage, emotional stability, past employment, general reputation, family responsibilities, and the attitude of law enforcement.  Id. (citing State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)).

At the outset of its sentencing ruling, the trial court stated that it would look to the following factors in making its determination as to whether to grant judicial diversion:

> Number one is the [D]efendant's amenability to correction.  That is whether the [D]efendant is likely to cooperate and whether he's going to be able to be controlled or influenced by those who are possibly supervising him and doing other things and whether he's likely to re-offend.

> Second one is the circumstances of the offense.

> The third one is the [D]efendant's record.

> The [D]efendant's social history is number four.

> Number five is his mental and physical health.

> Number six is the deterrence value to the [D]efendant as well as to others.

> And the seventh is whether the granting of judicial diversion will serve the interest of justice.  That is whether the interest of the public and the [D]efendant will be served by the granting of judicial diversion.

The trial court then elaborated on these factors.  First, considering the circumstances of the offense, the trial court noted that impersonating an attorney was more serious than impersonating other licensed professionals, such as beauticians, "due to the trust that is placed in an attorney."  The specific facts of this offense which were relevant to the trial court in its analysis were that the Defendant actually went to court to represent "clients," he took fees from those individuals, he made business cards describing himself as an attorney, he forged a bar card, and he involved himself in the practice of two licensed attorneys.  Also important to the trial court was that many other people in the community may have been represented by the Defendant and were still not aware that the Defendant was not an

attorney.[2]   The court further elaborated that "this was not a one time event," that the Defendant "was earning a living as an attorney," that "this was a long con that would have continued if [the Defendant] was not found out," and that the Defendant "engaged in a pattern of wrongdoing."

The trial court then stated positive factors in the Defendant's favor: the Defendant passed a drug test, he had received a good education and was in the process of improving his education, and he was in good health.  While the trial court was not certain if the Defendant was employed at the time of the hearing, the court did not weigh that against him and went so far as to state, "I believe that he's very capable of gaining employment and I think that he is very capable of doing a number of things that could account for making differences in a community toward the good."  The trial court stated that it considered all of these positive factors in favor of the Defendant.

The trial court then discussed the Defendant's amenability to correction and the likelihood of whether the Defendant would re-offend.  The court considered that the Defendant forged a bar card, printed business cards, and appeared in court as a lawyer.  The trial court also noted the impact to the victims: (1) the "fraud" perpetrated upon Attorney Lefkovitz and how the Defendant placed Mr. Lefkovitz's law practice in jeopardy; (2) Patrick Denton, whose personal information was used in the perpetration of a fraud upon the court and others in the community; and (3) the Defendant's "clients" who faced potential legal problems due to the Defendant's actions.  The trial court again remarked about the duration of the offense and the fact that the Defendant "began a continued involvement in illegality, that he had a pattern of wrongdoing."  The trial court observed, "[T]his is a long term con, C-O-N, against a community, against an institution, against a law partner, against the number of people that put their trust into him."

The trial court then stated that one of the "most important" factors was the Defendant's lack of remorse.  The court cited to the statement the Defendant made as part of his application for pre-trial diversion:

> I practiced law without a license.  However, I was hired to be a clerk and the job escalated into something more than I wanted.  I created a bar card.  I gave a . . . statement . . . to TBI Agent Dan Friel.  Overall, I am a good citizen and do not harm or bother anyone.  I believe this is frivolous and a waste of

---

[2] The district attorney's letter denying pre-trial diversion indicates that the case had received some publicity and, following that publicity, the district attorney's office became aware of other instances when the Defendant went into court and represented citizens.

taxpayer money. However, I admit it and will not be around the legal field in the future.

The trial court explained that the Defendant's statement to Agent Friel was different than what defense counsel had represented during the hearing, relaying that the Defendant wished to be a part of the legal field as a career. Most concerning to the trial court was the Defendant's statement that "this is frivolous and a waste of taxpayer money." The trial court then read from Rebecca Jared's victim impact statement:

> [I]t has really bothered me that a lot of my time has been wasted in court by someone who claimed to be a lawyer and promised to help me. This case involves my children, which makes matters worse. He had access to a lot of my personal information, including my Social Security Numbers of me and my children. This had caused nothing but additional stress and heartache that was not needed. I needed a lawyer to help and he pretended to be someone he was not.

The court then ruled that, although the Defendant would be benefitted, the granting of judicial diversion would not serve the interests of justice or the public. That concluded the trial court's ruling.

The Defendant complains that the trial court placed "disproportionate weight" on the circumstances of the offense, improperly considered the Defendant's "lack of remorse," and did not properly weigh all relevant factors. Here, the trial court denied diversion on the bases of the circumstances of the offense and the Defendant's amenableness to correction, including his "lack of remorse." The trial court did not abuse its discretion in reaching that conclusion. Although the trial court did not specifically discuss all of the diversion factors or explicitly state the weight it was applying to each factor, its findings implicitly show the weight it applied and evince a knowledge of the factors it was to consider. Substantial evidence exists to support the refusal.

The trial court discussed the factors it was applying to the Defendant at length. As for the circumstances of the offense, the trial court found several factors to be relevant: the impersonation of an attorney rather than some other licensed professional; representing "clients" in court; the duration of the offense; earing a living as an attorney; taking fees from clients; making business cards; forging a bar card; and involving himself in the practice of two licensed attorneys. Regarding his amenability to correction, the trial court reviewed the materials presented with the presentence report, concluding that the Defendant did not take any responsibility for his actions, noting that the Defendant called the case "frivolous and a waste of taxpayer money." The trial judge obviously believed that the Defendant's lack of

remorse militated against his potential for rehabilitation. The trial court's findings regarding the Defendant's behavior and lack of remorse relate to his amenability to correction. See State v. Kristi Dance Oakes, No. E2006-01795-CCA-R3-CD, 2007 WL 2792934, at *9 (Tenn. Crim. App., Knoxville, Sept. 27, 2007) (citing State v. Edward Arnold Rivera, No. W2001-00857-CCA-R9-CD, 2002 WL 1482655, at *3 (Tenn. Crim. App., Jackson, Feb. 4, 2002) ("Lack of remorse is an appropriate factor for a trial court to consider in deciding whether to grant judicial diversion.")). These factors are sufficient to support the trial court's denial of judicial diversion.

## Conclusion

We conclude that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion. The judgment of the Putnam County Circuit Court is affirmed.

_____

DAVID H. WELLES, JUDGE