IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 18, 2013

**STATE OF TENNESSEE v. SHANICE L. DYCUS**

**Appeal from the Circuit Court for Montgomery County**
**Nos. 41100550, 41101052, 41200440, & 41200479    John H. Gasaway, III, Judge**

—————————

**No. M2012-02297-CCA-R3-CD - Filed September 25, 2013**

—————————

The Defendant, Shanice L. Dycus, challenges the trial court's denial of judicial diversion for her multiple convictions for various drug-related offenses, including possession of marijuana in excess of one half of a gram with intent to sell or deliver within 1,000 feet of a school zone. See Tenn. Code Ann. §§ 39-17-417, -432. She contends that the trial court erred by failing to consider all of the required factors in deciding her suitability for judicial diversion and by failing to state on the record how it weighed the relevant factors. The State counters that possession of marijuana in excess of one half of a gram with intent to sell or deliver in a school zone is a non-divertable offense and, regardless, that the trial court properly denied diversion under the standard announced in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). Following our review, we conclude that the offense for which the Defendant stands convicted is eligible for diversion but that the trial court failed to consider and weigh all of the factors relevant in its decision denying diversion. Therefore, we reverse the trial court's denial of judicial diversion and remand this case for a resentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Reversed and Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Roger E. Nell, District Public Defender (on appeal); and Charles S. Bloodworth, Assistant District Public Defender (at hearing), for the appellant, Shanice L. Dycus.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle Consiglio-Young, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that on June 7, 2011, the Defendant was indicted for one count each of the following offenses occurring on November 19, 2010, case number 41100550: simple possession of marijuana, a Class A misdemeanor; criminal trespass, a Class C misdemeanor; and evading arrest, a Class A misdemeanor. See Tenn. Code Ann. §§ 39-14-405, -16-603, -17-418. On November 8, 2011, in case number 41101052, the Defendant was indicted for simple possession of marijuana and criminal trespass occurring on March 18, 2011. Furthermore, on May 8, 2012, the Defendant was indicted for one count each of the offenses occurring on September 13, 2011, case number 41200440: criminal trespass; simple possession of marijuana; possession of drug paraphernalia, a Class A misdemeanor, see Tennessee Code Annotated section 39-17-425; and evading arrest. Finally, in case number 41200479, the Defendant was charged on May 16, 2012 via criminal information with one count of each of the following: possession of marijuana in excess of one half of a gram with intent to sell or deliver within 1,000 feet of a school zone, a Class D felony (offense date April 21, 2011), see Tennessee Code Annotated sections 39-17-417 and -432; possession of drug paraphernalia (offense date April 21, 2011); and simple possession of marijuana (offense date May 1, 2012).

On May 16, 2012, the Defendant entered open pleas of guilty to all twelve charges, and a separate tampering with evidence charge was dismissed. At the Defendant's plea hearing, the facts surrounding the Defendant's four cases were summarized as follows:

> [S]he is a young lady; she was 18-years-old at the time of the first offense, 19 during much of 2011 and just turned 20 this year. In the first case that I recited, ending in five five zero with the date of the offense of November 19th, Officer Lon Chaney would testify that he was on patrol in Lincoln Homes projects, he saw the Defendant walking between buildings then suddenly changed direction when he saw her. He thought that was suspicious, he yelled out hey, and she took off running, ran to a door, wouldn't open it. As she ran she began throwing baggies of marijuana out of her pockets onto the ground.
>
> She finally stopped running; he went back and collected the baggies. There were five baggies on the ground, $2,000 in cash in her jacket, a cell phone containing several messages implying that she was to deliver the marijuana to a Cleo.
>
> When they ultimately weighed -- she was charged originally with possession with intent to sell or deliver, but they weighed the total, it was under one half ounce and so the charge came from the grand jury as a simple

possession, criminal trespass, she is under criminal trespass order from Clarksville Housing Authority to stay out of the Lincoln Homes project, and evading arrest for running after the officer told her to stop.

In case zero five two, this is the date of offense of March 18th of 2011. Again, Officer Gibbons and Bebee were on patrol in Lincoln Homes, they spotted the Defendant. By this time I don't think there's any officer who doesn't know [the Defendant] is under a bar letter from the housing authority. She was standing outside the number 38 building; again, she tried to hide behind a car, walked away; they came up, apprehended her, looked under the car and there was a small baggie of marijuana. She posted bond and was released.

The three charges currently in general sessions court, that will be taken up as a criminal information today, arraigned and a plea entered. The first two offenses occurred on April 21 of 2011. There were actually four citations issued this day, but the speeding and failure to have license were dismissed at sessions court.

Officer recites that she was stopped for speeding in [the] vicinity of Heritage Park; that's the skate park soccer complex out at the intersection of Peacher's Mill Road and 101st Parkway. It is within 1,000 feet of the property that comprises Kenwood Elementary School, Kenwood Middle School, Kenwood High School. She could not produce a valid driver's license. With her consent her car was searched and it disclosed three baggies of marijuana that weighed approximately three ounces; the paraphernalia recited is the three baggies used to hold the marijuana. She was cited for the two traffic offenses, arrested for the school zone drug and the paraphernalia, posted a bond and was released.

. . . .

The [g]eneral sessions case ending in nine two two zero, that's her most recent offense here; May first of this year she was stopped for failing to stop for a stop sign; the officer reports he detected an odor of marijuana coming from her car; a search of the car disclosed flakes, seeds and stems, shake I think they call it, of marijuana in the car, because of her record instead of citing her for running a stop sign a custodial arrest was made, she was transported to jail. After transport the officer inspected the back seat of his patrol car and found a small baggie, less than [a] half ounce of marijuana, that

had not been in his patrol car before her transport. They also charged her in this offense with tampering with evidence that will be dismissed upon entry and acceptance of the plea due to the facts of that case.

And then the new charge for which she is due to be arraigned at -- returned by the May term of the Grand Jury, that's the case ending in four four zero, she was, again, on September 13th of last year spotted in the vicinity of building 11 on Ernest Shelton Drive, which is within the Clarksville Housing Authority jurisdiction, contrary to the criminal trespass letter; she tried to run between the buildings; they ran her down; when apprehended she had a set of digital scales and a small amount of marijuana, six point zero nine grams, and she was arrested on that case.

The trial court accepted the Defendant's pleas, and a presentence report was ordered.

The sentencing hearing commenced on July 31, 2012. The presentence report was admitted into evidence. In the report, the Defendant reported her mental and physical health as "good," stating further that she did not currently use marijuana or alcohol and was not taking any prescription medications. The twenty-year-old, single Defendant testified at the hearing that she had graduated high school and was enrolled in college courses. She confirmed that she had never been convicted of a crime prior to these charges. The Defendant said that she was only eighteen at the time of her first arrest in these cases and agreed that it took "a while for those cases to drift through General Sessions Court[.]" According to the Defendant, she had not sold any marijuana since her last arrest in this case. She also confirmed that she had not received any promises in exchange for her open guilty plea and that the only benefit she had received was dismissal of the tampering with evidence charge. Discussion ensued about whether the charge of possession of marijuana in excess of one half of a gram with intent to sell or deliver within 1,000 feet of a school zone was eligible for diversion. The trial court then recessed the hearing until August 2, 2012, in order for the parties to research and resolve the issue.

At the August 2, 2012 hearing, the parties again argued the issue. Defense counsel contended that, because the offense was not excluded under the judicial diversion statute, Tennessee Code Annotated section 40-35-313, the Defendant was eligible. The State, on the other hand, argued that the offense statute, Tennessee Code Annotated section 39-17-432, which required a mandatory minimum sentence of two years to serve, controlled and that the Defendant was therefore not eligible. The State, referring to the "comments" of the offense section, averred that the policy behind the mandatory minimum sentence of the Drug-Free School Zone Act was to deter such conduct. The trial court again recessed the hearing in order to get an opinion on the issue from the Attorney General.

-4-

The hearing resumed on September 6, 2012. According to defense counsel, the Attorney General would not give an opinion in a pending case, so the court proceeded with the sentencing hearing. The Defendant was again questioned. The Defendant stated that she no longer sold marijuana and had never made any money by selling it. When asked about her incentive to peddle marijuana, she replied, "Hanging around the wrong people." She also stated that she lived with her mother and was taking care of her mother because she had a broken foot. She confirmed that she had not been arrested since her plea in this matter. According to the Defendant, she had enrolled in college courses in business management. She agreed that, if granted diversion, she would "obey the rules," "test clean for drug use," "stay in [her] classes," and "take care of [her] mother." On cross-examination, she was asked if she had sought employment, and she stated that she had tried to obtain employment, to no avail.

The parties again argued about whether the offense was eligible for diversion and, then if eligible, about whether the Defendant should receive diversion. Ultimately, the trial court decided to deny judicial diversion. In so doing, the trial court first detailed the history of these four cases, including when the Defendant was arrested, released, indicted, appeared in court, and appointed counsel. The trial court then ruled as follows:

> We are required . . . to try to address the question and make a decision based upon certain factors; your history, whether you have a history or not; your age would be a factor; one of the most important factors is your amenability to rehabilitation. . . .
>
> So on the one hand, you're a very young person, and that means you're likely to make stupid decisions more frequently, hopefully, th[a]n older people who have a little more experiences in their lives. But even though you're young you just . . . showed a disrespect for . . . what was going on. I mean, you'd get up and say well, I got to go down to general sessions court today because of what I've been arrested on, and then you get out of court and apparently that didn't have any affect on you. . . . [Y]ou leave and you just carry on business as usual; you go back to doing what you're doing. A complete disregard for the law and a lack of understanding of the wrongfulness of your actions.
>
> And it didn't just happened [sic] once. It wasn't like you went into general sessions and then went back and did something else, but this just kept on going. . . . And not only were you appearing down in the general sessions court and standing before that judge, you were appearing in this court and standing in front [of] this Court, and being arraigned and told what you're

charged with and having a lawyer appointed to represent you, and you get out of here and go back to business as usual. So if I was putting you on a scale of . . . one to ten, . . . the likelihood . . . of you being rehabilitated you'd -- you know, you'd be way down there in the ones and the two.

So I cannot honestly say that I am convinced, based on the evidence presented, that you are -- that you are remorseful, that you're sorry, and that you are committed to changing your ways and not doing this again given your history.

The court then sentenced the Defendant to concurrent terms of eleven months and twenty-nine days for the Class A misdemeanors, thirty days for the Class C misdemeanors, and two years for the Class D felony.[1]  This appeal followed.

## ANALYSIS

The Defendant contends that she is eligible for judicial diversion and that the trial court abused its discretion in denying diversion because it failed to review and weigh all of the relevant factors.  The State responds that the Defendant was not a qualified candidate for judicial diversion and further contends that this court should apply the standard announced in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012) (granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act), and determine that the trial court acted within its discretion in denying diversion.

A "qualified defendant" is eligible for judicial diversion if he or she is found guilty or pleads guilty to a Class C, D, or E felony, has not previously been convicted of a felony or a Class A misdemeanor, has not been granted judicial diversion previously, and is not seeking deferral under an excluded offense.  Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Tenn. Code Ann. § 40-35-313(a)(1)(A).  When the probationary period expires, if the defendant has completed probation successfully, the trial court will dismiss the proceedings against the defendant with no adjudication of guilt.  Tenn. Code Ann. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records.  See Tenn. Code Ann. § 40-35-313(b).  A person granted judicial diversion

---

[1]  The effective two-year sentence was originally probated.  However, the trial court was reminded about the minimum sentence requirement and changed the manner of service to that required by statute, two years in confinement.

is not convicted of an offense because a judgment of guilt is never entered. See Tenn. Code Ann. § 40-35-313(a)(1)(A).

Here, the Defendant pled guilty to possession of marijuana in an amount exceeding one half of a gram within 1,000 feet of a school zone. See Tenn. Code Ann. §§ 39-17-417, -432. Ordinarily, possession of a Schedule VI controlled substance in this amount would constitute a Class E felony. Tenn. Code Ann. § 39-17-417(g)(1). However, violating section 39-17-432 punishes a violation of section 39-17-417 at one classification higher. Tenn. Code Ann. § 39-17-432(b)(1). Moreover, "a defendant sentenced for" violating section 39-17-432 "shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence." Tenn. Code Ann. § 39-17-432(c). The statute itself notes the policy behind the Drug-Free School Zone Act:

> It is the intent of this section to create drug-free zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a drug-free zone are necessary to serve as a deterrent to such unacceptable conduct.

The State contends that "[b]ecause the statute establishing the offense requires service in confinement of at least the minimum allowable sentence in the defendant's appropriate sentencing range, that requirement is controlling over the general judicial diversion statute." The State cites to the generally accepted rule of statutory construction "that a special statute, or a special provision of a particular statute, will prevail over a general provision in another statute or a general provision in the same statute." State v. Davis, 173 S.W.3d 411, 415 (Tenn. 2005).

The Defendant replies that she is eligible for diversion because the offense is not excluded under section 40-35-313. See Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). The Defendant continues that she should be considered eligible because "the mandated manner of service is not triggered" until she is convicted of the offense and she is not convicted so long as she remains on diversion.

We agree with the Defendant. The two statutes are not in conflict. Judicial diversion is a form of "legislative largess." State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). The plain language of the diversion statute makes it clear that a person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See Tenn. Code Ann. § 40-35-313(a)(1)(A). The mandatory minimum sentence requirement of

section 39-17-432 is not triggered until a judgment of guilt is entered. The paramount rule of statutory construction "is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope." Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009) (citing State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008)). Courts "must always begin with the words that the General Assembly has chosen" and "must give these words their natural and ordinary meaning." Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 527 (Tenn. 2010). It is within the General Assembly's discretion to determine which offenses it deems ineligible for diversion, and the General Assembly has not done so in this instance. Irrespective of whether the omission of this offense was the result of inadvertence or intention, we cannot, and will not, read into the statutes an exclusion not specifically stated therein. Therefore, we conclude that the Defendant was a "qualified defendant" for diversion purposes.

Next, the Defendant challenges the trial court's denial of diversion, arguing that the trial court did not consider all the relevant factors or explain how it weighed these factors. The decision to grant judicial diversion lies within the discretion of the trial court and will not be disturbed on appeal unless it is shown that the trial court abused its discretion. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In other words, a denial of judicial diversion will not be overturned if the record contains any substantial evidence to support the trial court's action. Id. Moreover, we observe that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion [under Tennessee Code Annotated section] 40-15-105." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

When making a determination regarding judicial diversion, the trial court must consider the following factors: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's mental and physical health; (6) the deterrent effect of the sentencing decision to both the defendant and other similarly situated defendants; and (7) whether judicial diversion will serve the interest of the public as well as the Defendant State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing Parker, 932 S.W.2d at 958 and additional cases). The trial court may consider the following additional factors: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement." State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quotation omitted). The record must reflect that the trial court considered and weighed all these factors in arriving at its decision. Electroplating, Inc., 990 S.W.2d at 229. Additionally, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of

the factors, it must explain why these factors outweigh the others." Id. (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)).

Despite the law outlined above, the State seemingly concedes that the trial court failed to analyze and weigh all of the relevant factors and asks this court to affirm the trial court's decision under the recent opinions of this court applying the Bise standard of review to judicial diversion. See State v. Lewis Green, No. W2011-02593-CCA-R3-CD, 2013 WL 1282319, at *9 n.1 (Tenn. Crim. App. Mar. 28, 2013), perm. app. filed, (Tenn. May 29, 2013); State v. Kiara Tashawn King, No. M2012-00236-CCA-R3-CD, 2013 WL 793588, at *6-7 (Tenn. Crim. App. Mar. 4, 2013), perm. app. filed, (Tenn. May 2, 2013). These cases stand for the propositions that (1) the Bise standard of review affording trial court sentencing decisions a presumption of reasonableness applies to a court's grant or denial of judicial diversion and (2) the previous principles guiding this court to reverse a denial of judicial diversion for a trial court's failure to consider expressly "one or more of the seven legally-relevant factors (or merely because it failed to specify why some factors outweighed others)" is no longer good law. Green, 2013 WL 1282319, at *9 n.1; King, 2013 WL 793588, at *6-7. However, we respectfully disagree with those cases and conclude that we are bound by Electroplating, Inc. and Parker. In so concluding, we join in the rationales provided in the concurring opinions of State v. Paresh J. Patel, No. M2012-02130-CCA-R3-CD, 2013 WL 3486944 (Tenn. Crim. App. July 10, 2013) (Tipton, P.J., concurring and dissenting) (Witt, J., concurring).

In this case, the trial court failed to examine all of the required factors and explain why some factors outweighed others. The trial court noted the Defendant's youth but focused on the procedural history of this case, including that the Defendant was charged with multiple offenses over a period of some months, and her resulting amenability to correction. To the court, the continuous and repeated nature of the Defendant's conduct, along with her lack of remorse, weighed against her amenability to correction. The trial court also made it clear that any violation of the probation terms would result in the Defendant's going to jail, which would act as a deterrent on the Defendant.[2] The trial court noted its belief that "jail . . . would have a deterrent effect on" the Defendant, and "maybe if [she] had sat in jail for a while early on[, she] wouldn't have had some of these later activities."

However, beyond the Defendant's youth, the trial court did not consider the Defendant's mental or physical health; her social history; the interests of the public as well as the Defendant; or the circumstances of these offenses or her criminal record, outside of

---

[2] However, as noted previously, the trial court ordered incarceration rather than probation when reminded of the mandatory minimum sentence for the offense.

the procedural history of these cases.[3] Moreover, the court did not explain why the factors it relied upon outweighed the other factors. Although a denial of judicial diversion will not be overturned if the record contains any substantial evidence to support the trial court's decision, the court's failure to address each factor and adequately explain its denial of judicial diversion on the record may require a remand to ensure an adequate record for appellate review. See State v. Sean Nauss, alias, No. E2011-00002-CCA-R3-CD, 2012 WL 988139, at *4 (Tenn. Crim. App. Mar. 22, 2012) (citations omitted). Because the record does not reflect that the trial court considered all of the relevant factors in its analysis, nor did the court explain why the factors it relied upon outweighed the other factors, we reverse and vacate the Defendant's sentence and remand this matter to the trial court for a resentencing hearing. The trial court should place on the record its analysis of all of the required factors and the reasons underlying its decision.

## CONCLUSION

In consideration of the foregoing and the record as a whole, we reverse the decision of the trial court denying the Defendant judicial diversion. The Defendant's case is remanded for a resentencing hearing consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE

---

[3] We feel constrained to note that the plain language of the judicial diversion statue envisions that a defendant can only be placed on diversion on one occasion. However, a defendant can be eligible for multiple offenses arising out of separate cases, and the fact of multiple offenses from different cases is not enough, alone, to deny diversion. See State v. Jerome Nathaniel Johnson, No. E2010-02659-CCA-R3-CD, 2012 WL 1306440, at *10-12 (Tenn. Crim. App. Apr. 16, 2012) (defendant eligible for diversion "with regard to all of his Rhea County cases, assuming he had not already been granted diversion in his Maury County cases"), perm. app. denied, (Tenn. Aug. 15, 2012); see also State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (holding that judicial diversion was available to a statutorily eligible defendant charged with multiple offenses—three drug sales that took place on three different dates).