# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 1, 2011

## STATE OF TENNESSEE v. DANA HUBBARD

### Appeal from the Criminal Court for Shelby County
### No. 09-06922    Paula Skahan, Judge

### No.  W2011-00470-CCA-R3-CD  - Filed July 20, 2012

The Defendant, Dana Hubbard, pled guilty to theft of property valued over $1000, a Class D felony.  See T.C.A. §§ 39-14-103, 39-14-105 (2010).  He was sentenced as a Range I, standard offender to two years' probation.  On appeal, the Defendant contends that the trial court erred by denying his request for judicial diversion. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Stephen C. Bush, District Public Defender; Phyllis Aluko (on appeal) and Jennifer Johnson (at the plea & sentencing hearings), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Dana Hubbard.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lora Fowler and Bryan Davis, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

According to the State's recitation of the facts at the guilty plea hearing:

> [O]n or about June the 9th of 2009 a 1991 blue Ford Escort was located at Fuller Park Auto on Frizby by uniform patrol after management called the police.  The vehicle . . . was sold to them by a witness.  Named witness got the vehicle from the

defendant. . . . The defendant . . . took the vehicle from a ditch at Chula Holme and Knight Arnold on June the 8th of 2009 around 7:00 p.m.

The vehicle was taken to the defendant's address at 936 Prescott and stripped of parts by the defendant. The defendant later admitted taking the vehicle and giving it to the witness . . . to sale [sic] to the scrap yard. The defendant . . . was charged with theft of property with a value over $1,000. . . . The auto was valued at approximately $2,000. This did occur here in Shelby County.

On January 25, 2011, a sentencing hearing was held. The presentence report was received as an exhibit. The Defendant testified that his car broke down shortly before the instant offense. He said that he tried to find parts to repair his car but that the salvage yards did not have the needed parts. He said that his brother told him about a car "near some businesses." He said he went to the businesses and asked about the car because he wanted to buy it for the parts. He said that a man in one of the businesses told him that the key was in the glove box and that he could have the car if he could get it out of the ditch. He said that the man said the car had been in the ditch for "many years." His brother also told him that the car had been in the ditch for a long period of time.

The Defendant testified that after he got the car home and examined it, he learned that the part he needed was missing. He said he removed "a few odds and ends" and gave the car to his neighbor. He said his neighbor accumulated cars, stripped the valuable parts, and sold the parts. He said his neighbor wanted to give him a portion of the proceeds he received from selling the car and asked the Defendant to sign a bill of sale stating that he gave the car to the neighbor. He signed the bill of sale and placed his thumb print on the document. The neighbor told the Defendant that the car was identified as stolen when he tried to sell the car at Pull-a-Part in Memphis. The Defendant admitted that he took property that did not belong to him and that he did not follow up on the car after he took it.

The Defendant testified that with respect to his military record, the court martial in the presentence report stemmed from his ex-wife's conduct while he was deployed overseas. The record shows that the Defendant pled guilty to stealing a fellow marine's checkbook and writing checks from that account. He served three months of a six month sentence and was discharged from the Marines for bad conduct. He said that when he returned from his deployment, his wife had taken their children and all their belongings. He said that his wife was guilty of the theft but that she did not admit it. He said that because he was the marine,

he was responsible for her conduct. He learned his ex-wife had an affair and said he believed her conduct was an attempt to have him discharged from the military.

The Defendant testified that he worked as a forklift operator at New Breed Disney. He said that he was married with five children, that only one child lived with him, and that he paid child support to the other children. He stated that he requested judicial diversion because he feared having the theft conviction on his record would prevent him from providing for his family. He admitted that he took the car and said that he did not intend to harm anyone. He stated that he would comply with the conditions of his probation if the trial court placed him on judicial diversion.

On cross-examination, the Defendant testified that had he not pled guilty to the theft charges in the court martial, he would have been sentenced to five years' confinement. He believed his ex-wife and the marine whose checkbook was stolen "were in cahoots" and having an affair.

The Defendant testified that he went to several junk yards in Memphis to find the part he needed for his car but that none of the junk yards had the part. He said he did not order the part because it was more expensive than his car was worth. He stated that he intended to pay the owner of the car but that the man told him he could have the car if he could get it out of the ditch. When confronted with his police statement, which excluded anything about a man who told the Defendant the key was in the glove box and could have the car if he could get it out of the ditch, the Defendant stated that the officer asked specific questions and that he answered them. He agreed, though, he told the police that he and his brother saw a the blue Ford Escort in a ditch, that he removed the car from the ditch, and that he took the car to his home. He agreed this was the "whole story."

Upon examination by the trial court, the Defendant denied telling the probation officer that he received an honorable discharge from the military. He said he had worked as a forklift driver for one to one and one-half years. The court, though, confronted the Defendant with his courtroom statement that he was unemployed and could not afford an attorney from thirteen months earlier. The Defendant said he had worked as a forklift operator for one year. The court said, "You've got a funny way with the truth, real funny with the truth." The court stated that it did not believe the Defendant's story about the military. The Defendant said that he understood that it was "quite a story" but that it was true.

The trial court discredited the Defendant and found that the Defendant had a "real problem with the truth." The court did not believe the Defendant's statement that he went to every business and asked about the car. The court did not believe a businessman told the

-3-

Defendant that he could keep the car if he could get it out of the ditch or where to find the key. The court "sincerely doubted" that the car had been in the ditch for years.

The trial court refused to place the Defendant on judicial diversion. The Court found that the Defendant's lack of credibility made it difficult for the court to believe that he would be rehabilitated on judicial diversion. The court noted that the Defendant's prior court martial and the circumstances of the theft in this case were "not egregious." The court said the Defendant's social history and mental and physical condition were "okay." The court found that the deterrence value to the Defendant and to others was not "especially strong in this case." The court also found that judicial diversion would not serve the public interest because the Defendant was not "candid with the court about a number of things." The court found the Defendant was convicted of a crime while in the military but discredited the Defendant's story that his ex-wife was responsible for the charges. The court noted that the court martial centered around theft and acts of dishonesty. The court sentenced the Defendant as a Range I, standard offender to two years' probation. This appeal followed.

On appeal, the Defendant contends that the trial court erred by denying his request for judicial diversion. He argues that the court improperly denied judicial diversion on the ground that the Defendant was not credible. The State contends that the trial court did not abuse its discretion by denying the Defendant's request for judicial diversion. We agree with the State.

A trial court may grant a defendant's request for judicial diversion and "defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty." T.C.A. § 40-35-313(a)(1)(A). A Defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. Id. § 40-35-313(a)(1)(B)(i). The Defendant pled guilty to theft of property valued over $1000, a Class D felony, and had not been previously convicted of a felony or Class A misdemeanor. The Defendant was eligible for judicial diversion.

Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. T.C.A. § 40-35-313(a)(1)(A). When the probationary period expires, if the defendant has completed probation successfully, the trial court will dismiss the proceedings against the defendant with no adjudication of guilt. See T.C.A. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. See T.C.A. § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See T.C.A. § 40-35-313(a)(1)(A).

-4-

The decision to grant judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); see State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). This court will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting State v. Hammersley, 650 S.W.2d 353, 356 (Tenn. 1983)). "The same guidelines are applicable in diversion cases as are applicable in probation cases, but they are more stringently applied to those seeking diversion." State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59.

Although the trial court found that the deterrence value to the Defendant and to others was not especially strong in this case, the court found that the Defendant's lack of credibility made it difficult to believe the Defendant would be rehabilitated on judicial diversion. A finding that a defendant is dishonest provides a sufficient basis "to give the trial court the benefit of discretion" in deciding whether to grant or deny judicial diversion. See State v. Dowdy, 894 S.W.2d 301, 307 (Tenn. Crim. App. 1994). Likewise, the court found that judicial diversion would not serve the public interest because the Defendant was not candid about the circumstances surrounding his court martial or the circumstances surrounding the instant offense. We conclude that the trial court did not abuse its discretion by denying the Defendant's request for judicial diversion. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE