# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville May 21, 2013

## STATE OF TENNESSEE v. PARESH J. PATEL

### Appeal from the Circuit Court for Warren County
### No. F-13471  Larry B. Stanley, Jr., Judge

---

### No. M2012-02130-CCA-R3-CD- Filed July 10, 2013

---

The Defendant-Appellant, Paresh J. Patel, entered guilty pleas to two counts of distributing a synthetic cannabinoid, Class A misdemeanors, for which he received consecutive terms of eleven months and twenty-nine days on supervised probation. On appeal, he argues the trial court erred in denying him judicial diversion. Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court. JOSEPH M. TIPTON, P.J., filed a separate concurring and dissenting opinion. JAMES CURWOOD WITT, JR., J., filed a separate concurring opinion.

Quentin Scott Horton, McMinnville, Tennessee, for the Defendant-Appellant, Paresh J. Patel.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; and Lisa S. Zavogiannis, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A five-count indictment was returned against the Defendant-Appellant, Paresh J. Patel, and his wife, Bhavana P. Patel. Three of these counts were dismissed when Patel and his wife entered guilty pleas to two counts of distributing a synthetic cannabinoid, Class A misdemeanors. Patel was sentenced to consecutive terms of eleven months and twenty-nine days at seventy-five percent to be served on supervised probation plus a $2,000.00 fine, court costs and twenty-four hours of community service. He was also ordered to surrender $3,775.00 which was being held as evidence.

At the guilty plea hearing, the parties agreed upon the following facts recited by the State:

[O]n September 22, 2011, local law enforcement sent an undercover agent to various convenient markets and gas stations here in Warren County. One of these stores was Super Gas at 1128 Sparta Street. The purpose of the undercover agent was to purchase products that were banned by statute [T.C.A. § 39-17-438] known as synthetic drugs to most of us in the community. The undercover agent was provided with a sum of marked money and they wore a transmitting wire during this transaction. The informant purchased a synthetic drug from Mrs. Patel known as Dank and a separate package of rolling papers.

On September 23, 2011, local law enforcement sent the same undercover agent into the Super Gas at 1128 Sparta Street[,] and the agent purchased again the synthetic drug known as Dank and a metallic pipe with which to ingest the Dank that was purchased.

. . . .

At that time local law enforcement sought a search warrant. One was issued and executed on September 23, 2011. They found several of these banned substances in the Super Gas station in different locations totaling 379 packages. Several paper bags were found with large sums of money in them . . . .

A statement was taken from Mr. Patel in which he said he was the manager of the store and this was owned by his father-in-law. . . . He stated that him [sic] and his wife were equal partners in their job duties. He also stated that he bought the products from a mixed race male for a thousand dollars ten days prior to the bust.

The State stipulated that Patel had no prior convictions.

At the hearing to consider judicial diversion, Patel testified through an interpreter that he worked at Super Gas from 9:00 a.m. to 10:00 p.m., daily. He also worked in his home garden and had no hobbies. Patel had been a United States citizen for ten years and had never been charged with a crime. He lived with his wife of fifteen years, his mother, and his two children, whom he sent to private school. He was thirty-nine years of age and in good

-2-

physical and mental health. Patel testified that when he purchased the synthetic cannabinoid he thought it was "only herbal incense" and had "no idea [it was] illegal." He agreed that now that he knew it was illegal, he was sorry he had sold it. He said he had no intentions of selling anything else illegal or committing any other crimes. He vowed to take precautions to check the legality of a product someone attempted to sell to him for the store.

On cross-examination, Patel agreed that he purchased the items from someone who drove by, that he did not know anything about these products, and that he put them in his store to sell. He denied doing this often. On redirect examination, Patel said that when he purchased the product, he understood he could sell it at thirty or forty percent mark up. On recross-examination, Patel said that some of the items had sticker prices on them, and some did not. He sold them for twenty to forty dollars plus tax.

Patel's wife and co-defendant, a United States citizen of seven years, testified that she had been married to Patel for fifteen years. She worked in their convenience store from 4:30 a.m. to 2:00 p.m. daily. She believed the product at issue was incense. She had never been charged with a crime and was sorry this happened. She agreed to take precautions in the future to ensure the legality of the products she offered for sale. She told the other convenience store owners in the area not to repeat their error. She lived with Patel, his mother, and their two children, ages eight and twelve.

On cross-examination, Patel's wife acknowledged that she could read and speak English and did not have any problem understanding the laws of the United States. She said that some of the banned products were under the counter and some were on display and that anyone, including children, could have purchased them. She agreed she did not "card" anyone before selling the drugs. Ultimately, she testified that she did not recall where she placed the money she received from the confidential informant on September 22, 2011. Nor did she recall whether she provided the confidential informant with complimentary rolling papers with the Dank. She said they sold rolling papers with loose tobacco, too. On redirect examination, she estimated she conducted four hundred to four hundred fifty sales each day. She said she "was not there when they bought [the synthetic cannabinoid,] but they said it was an herbal incense." She agreed people used herbal incense in India but said it was "not like that."

Master Sergeant Tim Brown of the United States Army Reserve testified that he had served in three overseas combat missions and had also worked for the Coffee County Sheriff's Department for almost ten years. He delivered propane to the Patels' store and had known them for four years. Master Sergeant Brown had been to the Patels' house fifteen to twenty times and considered them friends and good citizens. He believed the Patels had "learned their lesson" and he did not change his view of them after they entered guilty pleas.

-3-

He agreed the Patels' physical and mental health was good and that the Patels would tell other convenience store owners that the items sold were illegal.

On cross-examination, Master Sgt. Brown agreed that he saw a lot of drug activity in Coffee County during his ten years in law enforcement. He did not believe that diversion for serious drug offenses, whether misdemeanors or felonies, provided a deterrent for the community. He saw the items in question which the Patels sold in their stores but disagreed that they were directed toward young people.

Investigator Jody Cavanaugh, a narcotics investigator with the Warren County Sheriff's Department testified that his Department conducted two controlled drug purchases from the Patels' store. During the first drug buy, the informant paid forty dollars for a package of the banned substance and received rolling papers. Investigator Cavanaugh had photographs of the purchased substance, Dank, on a disk. He said Dank is packaged "[i]n . . . an aluminum foil package, brightly colored." In the second drug buy, the confidential informant purchased another bag of Dank and a pipe used to smoke the substance. As a result of the two drug purchases from the Patels' store, the Department obtained a search warrant for Super Gas.

Investigator Cavanaugh presented a list of items, admitted into evidence, that he found as a result of the search warrant. He also found 379 packages of the banned substance in different areas of the store. He said that in his twenty-seven years of law enforcement experience, he had never seen a drug have as "broad [of a] spectrum of the problems that these drugs cause," and he agreed they have a much stronger effect. He said these drugs make people paranoid and hallucinate "quite a bit." He said one individual experienced bad effects from the drug over a year after using it.

The court granted Patel's wife judicial diversion and denied judicial diversion for Patel. Patel timely filed a notice of appeal.

## ANALYSIS

Patel contends the trial court erred in denying him judicial diversion "by not assessing all relevant factors . . . [and] by [] giving too much w[e]ight to one circumstance rather than all the factors and denying diversion to one of the co-defendants and granting judicial diversion to the other co-defendant for the same misdemeanors." The State responds that the trial court carefully considered all relevant factors, found Patel to have greater culpability than his co-defendant wife, and properly exercised its discretion in denying Patel judicial diversion. We agree with the State.

-4-

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. After a qualified defendant is either found guilty or pleads guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. T.C.A. § 40-35-313(a)(1)(A) (2010). A qualified defendant is defined as a defendant who pleads guilty to or is found guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or Class B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. Id. § 40-35-313(a)(2). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Id. § 40-35-313(b). "Eligibility, however, does not automatically translate into entitlement to judicial diversion." State v. Gretchen Rochowiak, No. E2012-00931-CCA-R3-CD, 2013 WL 1223388, at *2 (Tenn. Crim. App. Mar. 26, 2013) (citing State v. Bonestel, 871 S .W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000)).

Whether to grant or deny a request for judicial diversion lies within the trial court's sound discretion. State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996) (citation omitted). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). This court will conclude that the trial court did not abuse its discretion if the record contains "'any substantial evidence to support the refusal.'" State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992)(quoting Hammersley, 650 S.W.2d at 356).

A trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993) (citation omitted), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000)). The trial court may consider the following additional factors: "'[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). A trial court must weigh all of the required factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel,

871 S.W.2d at 168). Finally, this court has previously held that "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

Recently, in State v. Kiara Tashawn King, No. M2012-00236-CCA-R3-CD, 2013 WL 793588, *6 (Tenn. Crim. App. Mar. 4, 2013), this court explained the following:

> The stringent procedural requirements governing the judicial diversion process that we imposed on trial courts in Parker and Electroplating directly conflict with our duty, imposed by Bise and Caudle, to treat all in-range sentences imposed by trial courts as presumptively reasonable. Therefore, we can reach no conclusion other than that those portions of Parker, Electroplating, and their progeny in which this court reversed a trial court's decision to deny judicial diversion merely because the trial court failed to expressly consider one or more of the seven legally-relevant factors (or merely because it failed to specify why some factors outweighed others) can no longer be considered governing law. Instead, in order to comply with Bise and Caudle, in cases in which a trial court has made a procedural omission in the course of denying judicial diversion, we must in fact apply the standard of review that we have always purported to follow, see Parker, 932 S.W.2d at 958, and uphold the trial court's denial of judicial diversion if we find any substantial record evidence supportive of its decision.

Kiara Tashawn King, 2013 WL 793588, at *7; accord State v. Lewis Green, No. W2011-02593-CCA-R3-CD, 2013 WL 1282319, at *9 (Tenn. Crim. App. March 28, 2013).

Patel argues that the trial court abused its discretion in denying judicial diversion to him but granting it to his codefendant wife and in failing to articulate on the record how it arrived at its decision. Our review of the record shows that the trial court considered and implicitly weighed all of the appropriate factors. It evaluated Patel's amenability to correction, acknowledged that Patel did not have any criminal record, and recognized that Patel had an excellent social history and was in good health. The trial court stated, in pertinent part, the following:

> The circumstances of the offense bother me a little bit especially with Mr. Patel. I think he is the one that actually purchased these products and not that Mrs. Patel is without fault. . . . But the circumstance that bothers me the most is that Mr. Patel bought these items from someone he did not know and

did not do any investigation into what the product was, what it could do to you, and was making a substantial profit off of it and I think he let money get in the way of his good judgment. That is disturbing because this could have been anything. . . . [E]ven giving you the benefit of the doubt that you didn't know it was illegal, you still didn't know what it was. You're putting a product out on the market for, as your wife stated, anybody could buy it and Investigator Cavanaugh is correct, this is an extremely dangerous thing. So that really does bother me that you would buy something from someone you didn't know and put it out to the public to use and probably ingest without knowing what it was.

After considering the applicable factors, the trial court determined that judicial diversion would not serve the interests of the public. It further determined that Patel was more culpable than his wife because he purchased an unknown substance for resale to anyone in the store including minors. The trial court specifically stated "[Mr. Patel] definitely should have known that there was a potential for abuse here, that it was a drug being ingested and that danger engaging in that type of behavior is just unacceptable because somebody could have been killed." See State v. Keaton M. Guy, No. E2007-01827-CCA-R3-CD, 2008 WL 5130729, at *7 (Tenn. Crim. App. Dec. 8, 2008) (concluding that although the trial court did not "specifically enumerate" each factor regarding judicial diversion, the court "did address the requisite considerations in arriving at its decision to deny diversion"), perm. app. denied (Tenn. May 18, 2009); see also Lewis Green, 2013 WL 1282319, at *9 ("If a trial court fails in this duty, we may review the record to determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning."). The trial court clearly determined, and we agree, that the circumstances of the offense and the need for deterrence were overwhelming and necessarily outweighed the other factors considered by the court. Accordingly, Patel has failed to show the absence of "any substantial evidence" supporting the trial court's denial of his request for judicial diversion. Anderson, 857 S.W.2d at 572. We conclude the trial court did not abuse its discretion, and Patel is not entitled to relief.

## CONCLUSION

After a thorough review, we affirm the judgment of the Warren County Circuit Court.


_____
CAMILLE R. McMULLEN, JUDGE